**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

CARLOS PEREZ,

                                   Plaintiff,

        v.                                                          No. 10-CV-518
                                                                      (LEK/DRH)

BRIAN FISCHER, Commissioner; LUCIEN J.
LeCLAIRE, JR., Deputy Commissioner; JOHN DOE,
Inspector General of NYS DOCS; DALE ARTUS,
Superintendent, Clinton Correctional Facility; S.
RACETTE, Deputy Superintendent, Clinton
Correctional Facility; D. KEYSOR, Deputy
Superintendent of Administration, Clinton
Correctional Facility; D. HOLDRIDGE, Captain,
Clinton Correctional Facility; MILLER, Lieutenant,
Clinton Correctional Facility; R. FURNIA, Sergeant,
Clinton Correctional Facility; K. RABIDEAU,
Clinton Correctional Facility; D. DUQETTE, Clinton
Correctional Facility; S. TOUSIGNANT, Clinton
Correctional Facility; ST. LOUIS, Clinton Correctional
Facility; MUSSEN, Clinton Correctional Facility; and
JOHN/JANE DOES ##1-5, Clinton Correctional
Facility

                                   Defendants.

_____

**APPEARANCES:**                                    **OF COUNSEL:**

CARLOS PEREZ
Plaintiff Pro Se
07-A-1342
Great Meadow Correctional Facility
Post Office Box 51
Comstock, New York 12821

HON. ERIC T. SCHNEIDERMAN              GREGORY J. RODRIGUEZ, ESQ.
Attorney General for the                          Assistant Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

Plaintiff pro se Carlos Perez ("Perez"), an inmate in the custody of the New York State Department of Correctional and Community Services ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, thirteen named DOCCS employees and six "John/Jane Doe" defendants, violated his constitutional rights under the First, Sixth, Eighth and Fourteenth Amendments.  Compl. (Dkt. No. 1).  Presently pending is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56.  Dkt. No. 40. Perez opposes the motion.  Dkt. No. 45.  For the reasons which follow, it is recommended that defendants' motion be granted in part and denied in part.


## I. Background

The facts are related herein in the light most favorable to Perez as the non-moving party.  See subsection II(A) infra.  On February 3, 2009, while incarcerated at Clinton Correctional Facility ("Clinton"), Perez claims to have been physically assaulted, denied medical treatment, and issued false misbehavior reports.  Compl. ¶ 2.


### A.  Excessive Force and Deliberate Indifference to Medical Treatment

From approximately December 15, 2008 through January 26, 2009, Perez, through his court appointed attorney Barry Stendig of Appellate Advocates, filed grievances and letters complaining to defendants Fischer, LeClair, Artus, Racette, and Holdridge "that [Perez's] life was in danger by numerous Correction[s] Officers and/or Prison Officials at Clinton [who] . .

---

[1]This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

. had been constantly harassing and threatening to beat up [Perez] . . . ." Compl. ¶ 69.

Additionally, there was an alleged pattern and large number of incidents involving use of

force against inmates. Compl. ¶¶ 72-74. Despite these pleas for help and Clinton's

supposed history with excessive force, these defendants took no action. Compl. ¶ 70.

At approximately 8:30 p.m. on February 3, 2009, Perez was escorted from the law

library back to his dorm by defendant St. Louis. Compl. ¶ 3. Perez and the other inmates

also being escorted from the library were all required to pass through the metal detector

prior to arriving at their housing unit. Id. ¶ 23. Defendants Rabideau and Duquette assisted

St. Louis with the metal detector. Id. ¶ 24. Perez passed through the detector without

activating it, but Rabideau and Duquette ordered Perez to the wall to be frisked, claiming

that he had triggered the metal detector. Id. ¶¶ 24-25. Duquette searched Perez's body

while Rabideau took all of Perez's legal work and began rifling through it. Id. ¶ 26.

Rabideau then made the statement that Perez had filed many grievances and complaints

against Rabideau. Id. ¶ 27. Rabideau also exclaimed that Perez had a weapon hidden

amongst his legal documents and ordered Duquette to place mechanical restraints on

Perez. Id. ¶ 27.[2] The memoranda submitted in conjunction with the Unusual Incident

Report indicate that Duquette, not Rabideau, found and confiscated the weapon. Dkt. No.

1-6 at 8, 9.

Defendant Fumia, the area sergeant, was then notified of the situation and while they

were waiting for him to arrive, Rabideau ordered another corrections officer to escort the

rest of the inmates back to their dorms. Compl. ¶¶ 28-29. After the other inmates were out

_____

[2] In the unusual incident report, the weapon was described as a "sharpened . . .
plastic shank type weapon with a cloth handle," wrapped in a paper towel. Dkt. No. 1-6 at
5.

3

of sight, Rabideau, Duquette, St. Louis, and Fumia all surrounded Perez and Rabideau

made veiled threats to Perez, stating that he was aware of all of the grievances that were

being filed against him and the other Clinton officers and recommending that Perez cease

the filings.  Id.¶ 30.  Perez asked Rabideau to clarify what he meant, whereupon Rabideau,

Fumia and Duquette pulled Perez to the floor and, along with St. Louis, began kicking and

punching Perez throughout the head and body for approximately two minutes.  Id.¶¶ 31-34.

Rabideau and Fumia also told Perez, while they were assaulting him, that he would face

additional charges.  Id. ¶ 33.

    Perez was then dragged to the facility hospital until the defendants neared the facility.

Compl.¶ 35.  Perez was taken into a room by Fumia and Tousignant for a strip-frisk during

which time Rabideau, Duquette and St. Louis left.  Compl.¶ 37.  Fumia and Tousignant

completed the strip-frisk and Tousignant reapplied the mechanical restraints behind Perez's

back.  Id. ¶ 38; Dkt. No. 1-6 at 8, 10 (memoranda reporting that strip frisk occurred by

Tousignant under Furnia's direction); Dkt. No. 1-6 at 13 (report of strip frisk).  An

unidentified nurse then entered the room, asking Perez if he was alright.  Compl.¶ 39.

Fumia responded that they were just there for a strip-frisk since Perez was found to be in

possession of a weapon, but the Perez quickly added that he had been framed and

physically assaulted prior to being brought to the hospital.  Id.  ¶¶ 40-41.  Furnia ordered the

unidentified nurse to leave, while Furnia and Tousignant again assaulted Perez, knocking

him unconscious and requiring the nurse to awaken him with smelling salts.  Id..¶¶ 42-44.

After reviving Perez, the nurse left the room and failed to provide him with any medical care.

Id. ¶ 45.  Perez was then escorted to solitary confinement in restricted housing by Furnia

and Tousignant without any further medical intervention for the injuries he sustained to his

head, neck, arms and legs or the extreme pain he was experiencing.  Id. ¶¶ 46 -47.

Perez remained in his cell, unattended and suffering from severe pain, for two days despite his pleads to the patrolling corrections officers to provide him with medical care. Compl.¶ 48.  On February 5, 2009, Perez was taken to a mental health examination where the social worker, upon seeing Perez's physical condition, rushed him to the infirmary for medical treatment.  Id. ¶¶ 50-52.  Perez was interviewed and photographs of his injuries were taken.  Id. ¶¶ 53-55.  Perez was given a shot for neck and back pain, had developed a black eye and injuries to his neck and back, and discovered he was beginning to suffer from arthritis.  Id. ¶ 56; see also Dkt. No. 45-2 at 47 (inmate injury report noting a bruise on Perez's left side and neck, swelling on his neck, an pain in his neck and back), 48 (same). After Perez's pain medication ran-out, an unidentified doctor failed to provide him with more of the same medication, instead giving him over-the-counter pain relievers.  Compl.¶¶ 57-58.


### B. False Misbehavior Reports, Disciplinary Hearing, and Appeals

On February 6, 2009, Perez was escorted to the hearing room for two disciplinary hearings scheduled as a result of the two allegedly false misbehavior reports which Duquette[3] and Mussen[4] had issued on February 3, 2009.  Compl.¶¶ 59-60.  The hearings were conducted by defendants Keysor and Miller, both of whom deprived Perez of his

---

[3] Duquette's misbehavior report cited Perez with smuggling and possession of a weapon.  Dkt. No. 1-6 at 11.

[4] Mussen's misbehavior report cited Perez with a loss of state property, alleging that when Mussen was packing Perez's personal effects after he had been sent to solitary confinement, Mussen discovered that Perez's state-issued razor was missing from his property.  Dkt. No. 1-2 at 4.

constitutional right to due process by being biased, denying Perez the opportunity to present a defense, and failing to provide adequate assistance.  Id.  ¶¶ 61-64.  Keysor and Miller also conspired to convict Perez to conceal the assault and perpetuate the retaliation occurring against Perez at Clinton.  Id. ¶¶  64-66.  Miller found Perez guilty of losing his property and sentenced him to thirty days keeplock and loss of privileges.  Dkt. No. 1-7 at 1. Keysor found Perez guilty of possessing a weapon and smuggling his state issued razor. Compl.  ¶ 67; Dkt. No. 1-6 at 32.  Keysor relied upon Duquette's misbehavior report and testimony from Duquette and Rabideau which she deemed credible.  Dkt. No. 1-6 at 33. Perez was sentenced to six months in the Special Housing Unit ("SHU")[5] and six months loss of privileges.  Compl.¶ 67; Dkt. No. 1-6 at 32.

On March 4, 2009, Perez filed an appeal to Artus seeking reversal of Miller's finding of guilt citing Miller's (1) denial of Perez's inmate witnesses; (2) refusal to permit Perez to read into the record his testimonial statement;(3) decision to exclude Perez from the majority of the hearing; and (4) biased decision based on insufficient evidence.  Dkt. No. 1-7 at 1-10. On March 10, 2009, Holdridge affirmed Perez's conviction and sentence.  Dkt. No. 1-7 at 11.  On June 22, 2009, Perez initiated an Article 78 proceeding[6] to challenge the determination.  Dkt. No. 1-8.  The state court proceeding was dismissed because "[o]n December 29, 2009, the determination was reversed and expunged based upon state law

---

[5]SHUs exist in all maximum and certain medium security facilities.  The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ."  N.Y. Comp. Codes R. & Regs. tit. 7, § 300.2(b).  Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required.  Id. at pt. 301.

[6]N.Y. C.P.L.R. art. 78 establishes the procedure for judicial review of the actions and inactions of state and local government agencies and officials.

involving administrative issues."  Matracco Affirm. (Dkt. No. 1-9) ¶ 7 ; see also Id. ¶ 8; Dkt.

No. 1-10 at 1 (letter reversing and expunging conviction); Dkt. No. 45-2 at 51-52 (Decision

and Order dated January 15, 2010 dismissing state case).

On March 29, 2009, Perez filed an appeal to the unnamed Director of Special Housing

seeking reversal of the disciplinary hearing Keysor conducted beginning on February 6,

2009.  Dkt. No. 1-1.  In that appeal Perez contended that his due process rights were

violated because Keysor (1) improperly and untimely requested an extension for his

hearing, (2) refused to allow him to read his statements into the record,[7] (3) provided him

with insufficient assistance prior to the hearing commencing, (4) failed to allow him to call

the unidentified nurse as a witness to bolster his defense, (5) caused a fellow inmate

witness not to testify because of Keysor's tardiness, and (6) demonstrated bias towards

Perez by speaking to him rudely, covering the microphone to distort the questioning and

allowing defendant Duquette to testify twice and change his story.  Id.  The superintendent's

hearing was initially affirmed on April 24, 2009.  Dkt. No. 1-2 at 2.

Shortly thereafter, Perez filed a petition in state court seeking to have his conviction

reversed.  Dkt. No. 1-2 at 10-66; Dkt. No. 1-11.  Perez again contended that the hearing

violated his due process rights because Keysor (1) and an inmate assistant did not provide

him with evidence he requested, or allowed him to read his testimonial statements into the

record and he thus could not present sufficient evidence to prove his defense (Dkt. No. 1-2

---

[7] Keysor instead had Perez provide a short summary of his statement on the
record, and then attached his written statements, considering them prior to the disciplinary
decision.  Dkt. No. 1-1 at 6-9; Dkt. No. 1-4 (written statement explaining the alleged
assault which was summarized for the hearing record); Dkt. No. 1-6 at 19-22 (written
statement outlining ineffective assistance received prior to hearing for appointed
representative); Dkt. No. 45-2 at 54-56 (hearing record).

at 16-19, 23-26); (2) refused to find and precluded the testimony of the nurse who was a material and relevant witness (Dkt. No. 1-2 at 20-22, 26-29); (3) failed to base the disposition on some evidence because Perez's cross-examined the testifying defendants demonstrated their inconsistent statements about the material facts of the event (Dkt. No. 1-2 at 30-35); (4) was biased in assisting defendants during the hearing by allowing them to modify their testimony to be consistent with the use of force forms previously completed (Dkt. No. 1-2 at 35-37, 41-45); (5) requested untimely extensions and then lied about it (Dkt. No. 1-2 at 46-60); and (6) interfered with the clarity of the hearing tape by muffling the microphone on the tape recorder (Dkt. No. 1-2 at 61-62).  Eventually, Keysor's finding of guilt was administratively reversed and expunged from Perez's record on March 22, 2010. Compl.¶ 68; Dkt. No. 1-2 at 6; Dkt. No. 45-2 at 50.

## C. Grievances

On December 15, 2008, Rabideau issued Perez a misbehavior report for failing to follow several direct orders in the library, including  to sit down and stop speaking in a loud manner.  Dkt. No. 1-5 at 8; Dkt. No. 45-2 at 36.  Immediately thereafter, Perez filed a grievance against Rabideau, contending that he refused to help Perez and spoke to him in a berating manner, yelling and using profane language.  Dkt. No. 1-5 at 2-6[8].  Perez also included two inmates' names with his grievance who witnessed the event.  Id. at 5.  On January 13, 2009, the grievance was denied after an investigation, including an interview of the named inmates, because it was determined that Perez was at fault and Rabideau had

---

[8] An identical copy of this grievance was attached to Perez's opposition papers. Dkt. No. 45-2 at 31-35.

acted appropriately.  Id. at 9; Dkt. No. 45-2 at 37.  The decision was appealed and, according to Perez, the conviction was eventually reversed and the misbehavior report dismissed.  Dkt. No. 1-5 at 72.

On December 25, 2008, Perez filed another grievance, this time complaining that he had been denied delivery of a package.  Dkt. No. 1-5 at 11-20.  During the time Perez was being denied delivery of his package, he was also interviewed for the previously filed grievance against Rabideau.  Id. at 14.  An unnamed officer later informed Perez that his package was not being delivered to him because Perez had filed a grievance against Rabideau.  Id. Perez requested a transfer in the grievance, stating that his life was in danger due to the fact that the corrections officers were rallying around Rabideau and upset that Perez had filed a grievance against him.  Id. at 14-15, 17.  Perez also commented that he was now aware that supervisors did not care that this type of harassment and retaliation occurred in Clinton.  Id. at 15-16.  The grievance was denied by the Inmate Grievance Program ("IGP")[9], appealed by Perez, and denied by the CORC.  Id. at 30-31.

On December 29, 2008, Perez filed another grievance alleging retaliation and conspiracy between the unidentified guards who were working in his unit and Rabideau. Dkt. No. 1-5 at 35-41.  Perez asserts that he was denied permission to go to the law library and the gym because he filed a grievance against Rabideau after the law library incident. Id.  Perez again stated that he feared for his life as he was constantly being harassed and

---

[9]"The IGP [Inmate Grievance Program] is a three-step process that requires an inmate to: (1) file a grievance with the IGRC [Inmate Grievance Resolution Committee]; (2) appeal to the superintendent within four working days of receiving the IGRC's written response, and (3) appeal to the CORC [Central Office Review Committee] ... within four working days of receipt of the superintendent's written response." Abney v. McGinnis, 380 F.3d 663, 668 (2d Cir.2004) (internal citations omitted).

denied various privileges, all beginning and reasonably caused by the filing of his grievance against Rabideau.  Id.  The grievance was forwarded by Artus to Racette on December 31, 2008.  Id. at 44.  On January 5, 2009, Perez filed another grievance, reciting the same facts but also included the additional injury that he had a state court appeal deadline approaching that he would not be able to meet given his lack of access to the library. Id. at 45-52.  Perez continued to complain of harassment, deprivation, and conspiracy among the corrections officers due to the grievance he previously filed against Rabideau.  Id.

    An investigation ensued.  Dkt. No. 1-5 at 80.  During the interview, the investigating officer approved a law library pass for Perez for the following month, but  Rabideau still refused to put Perez on the  list, so he has still not been to the library.  Id. at 80-81. Accordingly, on January 20, 2009, Perez wrote a letter to Artus complaining that his position had not yet improved.  Id. at 80.  In addition, Perez complained that the other corrections officers on his unit were denying him meals or showers, explaining that it was in retaliation for Perez filing the grievance against Rabideau.  Id. at 81.  Perez was warned that if he continued to lodge complaints against the Clinton staff, the mistreatment would continue. Id. at 81-82.  Perez sought a transfer and immediate access to the law library so that his state court appeal could be timely filed.  Id. at 82-83.  Perez received a response indicating that the letter had been forwarded to Racette for review.  Id. at 84.

    On January 17, 2009, Perez filed another grievance against unnamed corrections counselor Welch, who threatened and followed through with filing false paperwork against Perez which impacted his release date because Perez refused to terminate his earlier filed grievance against Rabideau.  Dkt. No. 1-5 at 60-70.  In the grievance Perez also referenced another retaliatory event, spurred by the filing of the Rabideau grievance, whereupon

unnamed corrections officers refused to release Perez from his cell for a meal, explained to Perez that he would continue to starve and have a hard time unless he stopped filing grievances, and threatened to assault him and place him SHU to teach him a lesson. Id. at 65-66. Perez responded by saying that he would continue to file grievances so long as his rights were being violated. Id. Perez again requested to be transferred, expressing fears that "something really bad [wa]s going to happen to [him] . . . . " Id. at 69.

On January 20, 2009, Perez wrote to Fischer outlining his conflict with Rabideau, the fact that he had never been allowed to return to the law library since the misbehavior report was filed, and that multiple corrections officers conspired to deprive him of various things, citing specifically to his altercation with Welch, in retaliation for the subsequent grievance he filed against Rabideau. Dkt. No. 1-5 at 72-78. Perez received a response from LeClaire, on Fischer's behalf, directing that Perez address his problems with the specific facility as they were most capable at investigating and remedying their own internal issues. Id. at 79.

On January 21, 2009, Perez wrote to his court-appointed attorney, Mr. Stendig, explaining that he had previously filed a grievance against Rabideau and now was the target of harassment and deprivation. Dkt. No. 1-5 at 53-56. Perez stated that he had sent Stendig prior correspondence but did not believe that he received it because Perez had heard from another unidentified inmate that the corrections officers were throwing Perez's mail away. Id. at 54. Perez sent this letter under the name of a different inmate, and also included additional letters of complaint and instructions as to which DOCCS officials Stendig should forward them. Id. at 55. Perez again expressed fear for his life. Id. at 56. Stendig received the correspondence and responded to Perez, indicating that his complaints had been forwarded accordingly. Id. at 57-59.

11

On February 4, 2009, Perez again wrote to Artus, complaining about the alleged assault which occurred on February 3 and the lack of medical treatment which he received thereafter.  Dkt. No. 1-5 at 85-89.  Artus again replied to Perez again that his complaints had been sent to Racette for review.  Id. at 90.

Also, on February 21, 2009, Perez received a memorandum from Holdridge indicating that Perez's "staff complaint, grievance and letter . . . ha[ve] been investigated on at least two separate occasions . . . ."  Dkt. No. 45-2 at 39.  Holdrige addressed the "reported[ multiple acts of misconduct, [which] are the fault of [Rabideau], in retaliation for you filing a grievance.  Staff ha[ve] gone on record denying [the] allegations and there is no evidence or witnesses to support the allegations of your letter."  Id.  Holdrige concluded by indicating that all investigations into the staff misconducts were closed absent new evidence.  Id.

On April 20, 2009, after Perez had been transferred to Southport Correctional Facility ("Southport"), Perez wrote to the CORC seeking information on whether it had received his prior letter of the grievance appeals that he had filed.  Dkt. No. 45-2 at 41.  Perez explained that he attempted to file appeals for grievances on January 14, 30, and March 3, 2009.  Id. at 42.  The subject of those appeals were not discussed and the actual appeals were not attached to Perez's motion papers.  Id.  Also in the letter, Perez explained that he had been attempting to exhaust his grievances but that the officers at Clinton "were conspiring and retaliating against [him] by not allowing [his] grievances to be received and/or mailed out to the IGRC . . . and to [CORC] . . . as well . . . ."  Id. at 42-43.  On April 23, non-party Karen Bellamy responded that of the grievances that were on file for Perez, only two were appealed to CORC, and that there was no grievance on file alleging mail tampering.  Id. at 45.

12

The Assistant Director of the IGP, Jeffery Hale, submitted an affidavit in support of

defendants' present motion.  Dkt. No. 40-2.  Therein, Hale explained that Perez's

complaints

> that: (1) he was subjected to excessive force by officers at Clinton .
> . . on February 3, 2009; 2) that he was denied proper medical
> treatment for the injuries inflicted in the incident of February 3,
> 2009; 3) that the alleged assault of February 3, 2009 was in
> retaliation for his having written grievances against defendant
> Rabideau; 4) that two false misbehavior reports (both dated
> February 3, 2009) were levied against him; and 5) that defendants
> Keysor and Miller engaged in a conspiracy to find him guilty of
> those charges . . . [were all] proper subject[s] for a grievance under
> DOCCS grievance procedures . . . .

Hale Aff. ¶¶ 8-9.  When Hale searched the grievances filed, denied and appealed by Perez,

he determined that Perez had not appealed through CORC any of the grievances listed

above.  Id.  ¶¶ 10-11; see also Dkt. No. 40-3 (showing Perez's closed cases through 2011,

including showing six grievances closed after the date in question, though all were filed at

facilities other than Clinton).  However, Perez contends that his mail had been tampered

with and he received continual threats of abuse if he chose to continue filing grievances at

Clinton.  Perez Aff. (Dkt. No. 45-2 at 25-26) ¶ 3.  Instead, Perez chose to share all of his

information concerning the assault during his disciplinary hearing.  Id.  ¶ 4.  Perez also

contends that he attempted to file a grievance about the assault when he arrived at

Southport, presumably the previously referenced letter Perez sent to CORC.  Id.  ¶ 5.


## III.  Discussion

Perez contends that his First Amendment rights were violated when (1) he was

retaliated against for filing grievances and (2) liberally construing his complaint, he was

13

denied access to the law library given his pending state appeals.  Perez also contends that

his Eighth Amendment rights were violated when he was subjected to excessive force and

when defendants were subsequently deliberately indifferent to his medical needs.  Lastly,

Perez asserts that his Fourteenth Amendment rights were disregarded when defendants

failed to provide him with appropriate due process during his disciplinary hearings.

Defendants move for summary judgment contending that (1) Perez has failed

administratively to exhaust many of his claims; (2) Eleventh Amendment immunity bars

suits against defendants in their official capacities; (3) Perez's complaint fails to state a

First, Sixth or Fourteenth Amendment claim; (4) Perez has failed to plead the personal

involvement of Fischer, LeClaire, Artus, Racette and Holdridge; (5) Perez's claims of

conspiracy against Keysor and Miller are meritless; (6) state law claims should be

dismissed and (7) defendants are protected by qualified immunity.[10]

## A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any

material fact if supported by affidavits or other suitable evidence and the moving party is

entitled to judgment as a matter of law. The moving party has the burden to show the

absence of disputed material facts by informing the court of portions of pleadings,

depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; <u>Celotex Corp. v.</u>

<u>Catrett</u>, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the

---

[10] Defendants primarily rely on the failure to exhaust as the basis for the present
motion.  They did not address the merits of many of Perez's First Amendment claims or
any of his Eighth Amendment claims.

case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248

(1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the

non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue

for trial. The non-moving party must do more than merely show that there is some doubt or

speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could

find in favor of the non-moving party for a court to grant a motion for summary judgment.

Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v.

Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks summary judgment against a pro se litigant, a court must

afford the non-movant special solicitude.  Triestman v. Fed. Bureau of Prisons, 470 F.3d

471, 477 (2d Cir. 2006).  However, the mere existence of some alleged factual dispute

between the parties will not defeat an otherwise properly supported motion for summary

judgment; the requirement is that there be no genuine issue of material fact.  Anderson, 477

U.S. at 247-48.


## B. Failure to Exhaust

Under 42 U.S.C. § 1997e(a), an inmate must exhaust all administrative remedies

prior to bringing any suits challenging prison conditions, including federal civil rights cases.

Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Woodford v. Ngo, 548 U.S. 81, 83

(2006).  This exhaustion requirement applies to all prison condition claims.  Porter, 534 U.S.

at 532.  "[A]ny deprivation that does not affect the fact or duration of a prisoner's overall

confinement is necessarily a condition of that confinement." Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999). The exhaustion requirement also applies even if the administrative grievance process does not provide for all the relief requested by the inmate. Nussle, 534 U.S. at 524.

While the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citing Giano v. Goord, 380 F.3d 670, 677 (2d Cir. 2004)). Exhaustion for an inmate in DOCCS custody is generally achieved through the IGP. See N.Y. Comp. Codes R. & Regs. tit. 7, § 701.1, et seq.; see also note 3 supra. Allegations of staff harassment are subject to an expedited procedure whereupon the complaint is first reviewed by the Superintendent and only if it is not a bona fide claim will it be returned to the IGP for normal processing. N.Y. Comp. Codes. R & Regs. tit. 7, § 701.8. Included within the IGP's exhaustion requirement is the prerequisite that the inmate file an appeal with CORC and receive a response from CORC prior to filing a federal lawsuit. Torres v. Carry, 672 F. Supp. 2d 338, 344 (S.D.N.Y. 2009); see also N.Y. Comp. Codes R. & Regs. tit. 7 § 701.5(d)(2)(ii) ("The CORC shall review each appeal, render a decision on the grievance, and transmit its decision . . . within 30 calendar days"). Disagreement with the superintendent's decision in the expedited review also requires an appeal to CORC. N.Y. Comp. Codes. R & Regs. tit. 7, § 701.8 (g)-(h); see also Espinal v. Goord, 588 F.3d 119, 125 (2d Cir. 2009) (explaining IGP and the expedited procedure for harassment claims and its appeal mechanism through CORC). Exhaustion must precede filing a lawsuit. Neal v. Goord, 267 F.3d 116, 122 (2d Cir. 2001) ("Subsequent exhaustion after suit is filed therefore is insufficient.") abrogated in part on other grounds by Porter, 534 U.S. 516.

16

The failure to exhaust may be excused in limited circumstances.

> In determining whether such an exception is applicable, a district court must apply a three-part test: First, the court must determine whether administrative remedies in fact were available to the prisoner. Second, if such remedies were available, the court must determine whether the defendants' own actions inhibited the inmate's exhaustion of administrative remedies, thereby requiring that one or more of them be equitably estopped from raising the failure to exhaust as a defense. Finally, if administrative remedies were available and the defendants are not estopped, the court must determine whether any special circumstances justify the prisoner's failure to comply with administrative procedural requirements.

Gayle v. Benware, 716 F. Supp. 2d 293, 298 (S.D.N.Y.2010) (internal citations omitted); see generally Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004) (articulating above test as the appropriate method for excusing failure to exhaust given the present state of all Second Circuit opinions).  "Unavailability of administrative remedies . . . is an objective [test]: that is, would a similarly situated individual of ordinary firmness have deemed them unavailable."  Kasiem v. Switz, 756 F. Supp. 2d 570, 576-77 (S.D.N.Y. 2010) (internal quotation marks and citations omitted).  Estoppel occurs when "an inmate reasonably understands that pursuing a grievance through the administrative process will be futile or impossible . . . [as evidenced by] prison officials' threats, beatings, . . . denials of grievance forms, or by other misconduct deterring [the inmate] from fulfilling the requisite procedure."  Id. at 577 (internal quotation marks and citations omitted).  If an inmate claims estoppel and continues to file complaints and grievances, the exception is inapplicable.  Id.  Special circumstances exist when an inmate's failure to comply can be justified.  Id. (citations omitted).  Justification is found "by looking at the circumstances which might understandably lead usually uncounselled prisoners to fail to grieve in the normally required

17

way." Giano v. Goord, 380 F.3d 670, 678 (2d Cir. 2004) (citations omitted).

When considering whether special circumstances exist, the inmate's actions must have given prison officials sufficient information to put them on notice of the complaints, despite the inmate's failure to utilize formal grievance procedures, as well as give the prison time to evaluate the claims. Macias v. Zenk, 495 F. 3d 37, 43-44 (2d Cir. 2007). Thus exhaustion requires satisfaction of both a substantive prong, requiring prison officials to be placed on notice of the complaint, and a procedural prong, expecting inmates to present their grievances within a formerly prescribed framework permitting both investigation and remediation. Id. In an unpublished decision, the Second Circuit has held that multiple informal complaints from an uncounseled inmate, resulting in a formal investigation and response for prison officials, may constitute special circumstances excusing a failure to exhaust. Edwards v. Tarascio, 119 Fed.Appx. 327, 329 (2d Cir. 2005) (attached to this Report-Recommendation as Ex. 1).

In this case, despite Perez's contentions to the contrary, his claims regarding the alleged assault, denial of medical care, retaliation, and conspiracy were all subject to grievance.[11] See N.Y. Comp. Codes R. & Regs. tit. 7, § 701.2(a) (defining a grievance as any "complaint . . . about the substance or application of any written or unwritten policy, regulation, procedure or rule of the [DOCCS] or any of its program units, or the lack of a policy, regulation, procedure or rule."); Chavis v. Goord, No. 00-CV-1418 (LEK/DEP), 2007 WL 2903950, at *5-*6 (N.D.N.Y. Oct. 1, 2007) (explaining how exhaustion requirements apply to all suits about prison life, including both general conditions and specific incidents, and how

---

[11] All parties agree that any alleged violations resulting from a prison disciplinary proceeding are not subject to grievance. Dkt. No. 46 at 2.

filing a grievance is necessary to satisfy the exhaustion element) (internal quotation marks and citations omitted) (attached to Report-Recommendation as Ex. 2).

Perez successfully appealed two grievances through CORC prior to the alleged assault.[12]  Moreover, when Perez wrote a letter to Fischer on January 20, 2009, just weeks before the alleged assault, the response indicated that Perez needed to address his complaints at the facility level as they were best suited to achieve a reasonable resolution. Accordingly, Perez was again informed that the appropriate mechanism for resolving complaints was at the facility level, presumably through the IGP.  It is undisputed that Perez successfully appealed two grievances prior to the alleged assault and six thereafter. However, the subsequent appeals occurred after Perez had been transferred to different correctional facilities and did not concern the immediate issues at hand, the alleged assault and denial of medical care.  Like the inmate in Edwards, Perez's continued complaints resulted in multiple investigations.  However, unlike that inmate, Perez cannot be said to have been uncounseled in the ways of filing and appealing grievances as he had successfully done so in the past.  Instead, Perez contends that he attempted to pursue grievances and appeals during his testimony at his disciplinary hearing and alleges in his opposition that attempts to file grievances were thwarted by Clinton officers' constant threats and harassment and them throwing out his mail instead of sending it to the IGP.

Perez's contention that he satisfied the exhaustion requirement by mentioning his constitutional claims during his disciplinary hearing is insufficient.

_____

[12] Liberally construing Perez's complaint and attached documents, Perez asserts a First Amendment claim against Rabideau for preventing him from accessing the law library.  However, as discussed infra, such a claims is not supported by sufficient evidence and, therefore, will not be discussed further here.

19

> While the mention of a constitutional claim during plaintiff's disciplinary hearing could potentially have satisfied his substantive exhaustion requirement by virtue of his having notified prison officials of the nature of his claims, he did not fulfill his procedural exhaustion requirement by complying with the system's critical procedural rules. The mere utterance of his claims during the course of a disciplinary hearing does not obviate the requirement that he file a grievance setting forth a claim which is based upon the same or closely related facts.

Chavis, 2007 WL 2903950, at *9 (internal quotation marks and citations omitted).

Accordingly, Perez will only satisfy the exceptions to the exhaustion requirement if defendants' actions in threatening, harassing, and allegedly tampering with his mail caused the required procedures to be unavailable.

Perez makes general allegations that Clinton officers tampered with his mail by throwing it away instead of properly forwarding it on to the IGC or CORC.  However, such allegations will not suffice when an inmate "offers no evidence that any particular officer thwarted his attempts to file . . . simply contend[ing] that the practice of destroying or misplacing grievances must have been the cause of his grievances being lost."  Veloz v. New York, 339 F. Supp. 2d 505, 516 (S.D.N.Y. 2004).  All Perez has offered are conclusory allegations that an unidentified inmate witnessed unidentified corrections officers improperly disposing of his mail.  These allegations alone, without any corroboration, are insufficient to excuse Perez's failure to comply with the exhaustion requirements.  Id. (citations omitted)  Accordingly, defendants' motion on this ground should be granted.

Perez began filing grievances, for a multitude of deprivations not pled in the current complaint yet stemming from his conflict with Rabideau, as early as December 15, 2008.  In Perez's subsequently filed grievances and letters of complaint authored in December and January, he also included general claims that he was subjected to continual threats and

20

harassment.  Such conclusory allegations of threats are insufficient to state a claim for estoppel.  See Bennett v. James, 737 F. Supp. 2d 219, 226 (S.D.N.Y. 2010) (denying claims of estoppel where inmate "provide[d] no information as to who threatened or misinformed him – or where or when these alleged interactions took place.").

In opposition to the pending motion, Perez claims it was these threats which precluded him from filing grievances related to his assault, denial of medical care, retaliatory false misbehavior reports, and conspiracy.  The Second Circuit has held that "threats or other intimidation by prison officials may well deter a prison of 'ordinary firmness' from filing an internal grievance, but not from appealing directly to individuals in positions of greater authority within the prison system . . . . "  Hemphill, 380 F.3d at 688; see also Hale v. Rao, 768 F.Supp. 2d 367, 376 (N.D.N.Y. 2011) (explaining that estoppel has precluded defendants arguments against failures to exhaust where "threats made by prison staff prevented plaintiff from filing a grievance.") (citations omitted).  As previously stated, Perez claimed that he was being threatened and harassed continually since December 2008, memorializing these claims in various letters and grievances filed here in support of his opposition.  However, these complaints must be specific, which Perez's were not.  Bennett, 737 F. Supp. 2d at 226.  Moreover, despite these complaints, Perez continued to file grievances and letters, refuting his claims of paralyzing fear.  Kasiem, 756 F. Supp. 2d at 577.

On February 3, the circumstances changed because Perez was allegedly assaulted by defendants Furnia, Duquette, Tousignant, Rabideau and St. Louis and retaliatory false misbehavior reports were subsequently issued by defendants Mussen and Duquette.  Construing the facts in the light most favorable to Perez, the assault and following medical

21

and disciplinary deprivations were in retaliation for the initial grievances Perez filed against Rabideau because during the assault Rabideau indicated as much.  Similar to the inmate in the Hemphill case, Perez was assaulted and during the assault, again threatened that the abuse would continue so long as his grievances and claims against the Clinton staff continued.  380 F.3d at 683-84.  Also similar to the inmate in the Hemphill case, instead of filing another grievance, Perez wrote to Artus complaining about the abuse, subsequent medical treatment, and retaliatory false misbehavior reports.  Id. at 684.

The filing of this letter does not disprove any potential claims that Perez was actually in fear from the harassment.  Id. at 688 (finding that filing suit or sending letters to prison authorities does not refute that an inmate is frightened or significantly deterred from filing grievances).   In fact, the letter to Artus instead of the facility grievance personnel, in conjunction with Perez's refusal to write any additional correspondence until being away from Clinton, supports Perez's claims that defendants assault caused, and consequently justified, his failure to exhaust his administrative remedies.  After that letter to Artus, Perez did not author any other correspondence while incarcerated at Clinton.  In fact, the next letter included in Perez's opposition was authored at the end of April, after being transferred to a different correctional facility.  Dkt. No. 45-2 at 41, 44 (grievance indicating Perez's address was not at Southport Correctional Facility).[13] Additionally, Perez began filing grievances regularly once he was transferred from Clinton.

Defendants contend that Perez's "conclusory allegations that nameless officials at

---

[13] In that letter, Perez indicated that he attempted to file his grievances and appeals on February 23, 2009 when he was away from Clinton on a court trip to Auburn Correctional Facility. Dkt. No. 45-2 at 41-42.  The copy of that February 23 letter, and the attachments of the grievances and appeals, were not included with Perez's opposition papers.  Accordingly, the substance of the letter and appeals are unknown.

Southport, who are not defendants to this action, 'would not allow' [Perez] to file a 'grievance . . . '" are insufficient to excuse the failure to exhaust.  Dkt. No. 46 at 4. However, defendants have misinterpreted Perez's letter from Southport which indicates that, after the alleged assault, Perez had only attempted to comply with the administrative system when he was away from Clinton due to the actions of the officers there.  Given Perez's regular filing of letters and grievances, and the abrupt cessation of such after the assault about which defendants had warned Perez, there is a question of fact whether the alleged assault caused Perez not to file grievances.  Moreover, viewing the record in the light most favorable to Perez, the defendants' actions in assaulting Perez, writing false misbehavior reports, and threatening further reprisals serves to estop defendants from asserting this affirmative defense.  McCullough v. Burroughs, No. 04-CV-3216, 2005 WL 3164248, at *4 (E.D.N.Y. Nov. 29, 2005) (allowing estoppel to by used only against defendants that exhibit "direct[] threat[s] . . . or retaliat[ion] against [the inmate] for filing grievances.") (attached to Report-Recommendation as Ex. 3).

    Accordingly, viewing the facts in the light most favorable to Perez, the process was rendered unavailable to him and defendants are estopped from using a failure to exhaust as a bar to further recovery.  See Hemphill, 380 F.3d at 687-91 (remanding case to determine if defendants threats rendered the grievance program unavailable to the inmate and therefore estopped defendants from proffering their affirmative defense); McCullough, 2005 WL 3164248, at *3-*4 (denying summary judgment because allegations that inmate was assaulted in retaliation for filing prior grievances, and was threatened during the assault about continued filings, raised genuine issues of material fact about whether the grievance procedures were available and whether estoppel barred defendants assertions).

Therefore, defendants' motion on this ground should be denied as to all such claims.

## C. Personal Involvement

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus, supervisory officials may not be held liable merely because they held a position of authority.  Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  However, supervisory personnel may be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged constitutional violation,
>
> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong,
>
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom,
>
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or
>
> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).[14]

------

[14]  Various courts in the Second Circuit have considered how, if at all, the Iqbal decision affected the five Colon factors which were traditionally used to determine personal involvement.  See McCarroll v. Fed. Bureau of Prisons, No. 08-CV-1343 (DNH/GHL), 2010 WL 4609379, at *4 (N.D.N.Y. Sept. 30, 2010) (noting that although the Second Circuit has not yet addressed Iqbal's impact on the five Colon factors, several

### 1. Fischer and Artus

The gravamen of Perez's complaints against these defendants were that they (1) were in a position of power and thus always involved with anything occurring in conjunction with Perez's incarceration; (2) received complaints and grievances from Perez; and (3) were aware of the repeated instances of excessive force used on inmates.

However, attempts to establish personal involvement based upon the supervisory role these defendants occupied is inappropriate.  Wright, 21 F.3d at 501 (holding that a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement).  Additionally, merely writing letters to defendants is insufficient to establish notice and personal involvement.  Smart v. Goord, 441 F. Supp. 2d 631, 643 (S.D.N.Y. 2006) ("Commissioner . . . cannot be held liable on the sole basis that he did not act in response to letters of protest sent by [plaintiff] . . . .").  Similarly, receipt of a letter, without personally investigating or acting on the letter or grievance, is insufficient to establish personal involvement.  See, e.g., Rivera v. Fischer, 655 F. Supp. 2d 235, 238 (W.D.N.Y.2009) (citing cases); Boddie v. Morgenthau, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004) ("While mere receipt of a letter from a prisoner is insufficient to establish individual liability . . . [p]ersonal involvement will be found . . . where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint.").

district courts have done so); Kleehammer v. Monore County, 743 F. Supp. 2d 175 (W.D.N.Y. 2010) (holding that "[o]nly the first and part of the third Colon categories pass Iqbal's muster . . . ."); D'Olimpio v. Crisafi, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) (disagreeing that Iqbal eliminated Colon's personal involvement standard).

Fischer forwarded one of Perez's letters to LeClaire for a response and Artus routinely

forwarded Perez's communications to Racette for review and one of Perez's appeals to

Holdridge for a disposition.  However, it is within the purview of a superior officer to delegate

responsibility to others.  See Vega v. Artus, 610 F. Supp. 2d 185, 198 (N.D.N.Y.2009)

(finding no personal involvement where "the only involvement of the supervisory official was

to refer the inmate's complaint to the appropriate staff for investigation.") (citing

Ortiz-Rodriquez v. N.Y. State Dep't of Corr. Servs., 491 F. Supp. 2d 342, 347 (W.D.N.Y.

2007)).  Perez's conclusory allegations that defendants Fischer and Artus were aware of

and dismissed multiple instances of excessive force are also insufficient to establish

personal involvement.

Accordingly, defendants' motion on this ground as to Fischer and Artuz should be

granted.


### 2. LeClaire

Perez alleges that LeClaire was personally involved for substantially the same reasons

as discussed above in subsection II(C)(1).  According to the documents Perez submitted, it

appears that LeClaire's only involvement in the present case was to respond to Perez on

Fischer's behalf.  In that response, LeClaire directed Perez to address all his complaints

and grievances at the facility level as those were the individuals best equipped to

investigate and remediate inmate complaints.

For the reasons stated above in subsection II(C)(1), Perez's complaints regarding

LeClaire's position in the chain of command and alleged obtuse knowledge of numerous

excessive force incidents are also insufficient to state personal involvement.  Moreover, as

it is within the purview of a superior officer to delegate responsibility to others, a person in a position of authority may also direct an inmate's complaint to the appropriate body for resolution.  See Vega v. Artus, 610 F. Supp. 2d 185, 198 (N.D.N.Y.2009) (finding no personal involvement where "the only involvement of the supervisory official is to refer the inmate's complaint to the appropriate staff for investigation.") (citing Ortiz-Rodriquez v. N.Y. State Dep't of Corr. Servs., 491 F. Supp. 2d 342, 347 (W.D.N.Y.2007)).  Accordingly, LeClaire's response which effectively referred Perez to the correct agency to which to address his complaints, serves as a similar delegation and is insufficient to establish personal involvement.

Accordingly, defendants' motion on this ground as to LeClaire should be granted.


### 3. Racette

Perez alleges that Racette was personally involved for substantially the same reasons as for Fischer, Artus, and LeClaire.  According to the documents Perez submitted, it appears that Racette's only involvement was receiving complaints from Artus for review, investigation, and potential remediation.  However, as previously stated, receipt of a letter, without personally investigating or acting on the letter or grievance, is insufficient to establish personal involvement.  See, e.g., Rivera v. Fischer, 655 F. Supp. 2d 235, 238 (W.D.N.Y.2009) (citing cases); Boddie, 342 F. Supp. 2d at 203 ("While mere receipt of a letter from a prisoner is insufficient to establish individual liability . . . [p]ersonal involvement will be found . . . where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint.").  There is nothing further provided in the record to indicate that Racette investigated any of these complaints or came

to a conclusion about their veracity.  Accordingly, defendants' motion on this ground as to

Racette should be granted.

### 4. Holdridge

Perez alleges that Holdridge was personally involved for substantially the same reasons.

According to the documents Perez submitted, it appears that Holdridge affirmed Miller's

finding of guilt in the  disciplinary hearing and also responded to Perez's staff complaints,

after an investigation, explaining that Perez's allegations had been deemed unfounded.

While some districts have determined that merely affirming a disciplinary determination

is insufficient to establish personal involvement, the Northern District has held the opposite.

See Rodriguez v. Selsky, No. 07-CV-432 (LEK/DEP), 2010 WL 980273, at *5-*7 (N.D.N.Y.

Mar. 15, 2010) (discussing cases from other districts in this circuit holding that merely

affirming a disciplinary determination is insufficient to establish personal involvement.

comparing them to other cases in the Northern and Southern Districts which came to the

opposite conclusion, and determining that the latter cases were "both better reasoned and

more consistent with the Second Circuit's position regarding personal involvement.")

(citations omitted) (attached to Report-Recommendation as Ex. 4). Additionally, through his

memorandum to Perez, it is clear that he was active in the investigation and determination

of the validity of Perez's continued complaints against staff regarding their harassment and

retaliation.  Accordingly, defendants' motion on this ground as to Holdridge should be

denied.

**D.  Eleventh Amendment**

It appears that Perez is suing defendants in both their individual and official capacities. See Compl. ¶ 79 (claiming that defendants acted "in their Individual and Official capacities and within the scope of their employments . . . .").  The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI. "[D]espite the limited terms of the Eleventh Amendment, a federal court [cannot] entertain a suit brought by a citizen against his [or her] own State."  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984) (citing Hans v. Louisiana, 134 U.S. 1, 21 (1890)). Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment.  Halderman, 465 U.S. at 100.  Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states. See Quern v. Jordan, 440 U.S. 332, 340-41 (1979).

A suit against a state official in his or her official capacity is a suit against the entity that employs the official.  Farid v. Smith, 850 F.2d 917, 921 (2d Cir. 1988) (citing Edelman v. Jordan, 415 U.S. 651, 663 (1974)).  "Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself," rendering the latter suit for money damages barred even though asserted against the individual officer. Kentucky v. Graham, 473 U.S. 159, 166 (1985). Here, Perez seeks monetary damages against defendants in their official capacity for acts

occurring within the scope of their duties.  Thus, the Eleventh Amendment bar applies and serves to prohibit Perez's claim for monetary damages against defendants in their official capacities.

Accordingly, it is recommended that defendants' motion be granted on this ground.

## E. First Amendment

### 1. Retaliation

Perez contends that Mussen and Duquette filed false misbehavior reports in retaliation for his previously filed grievances against Rabideau.  To state an actionable claim for retaliation, a plaintiff must first allege that the plaintiff's conduct was constitutionally protected and that this protected conduct was a substantial factor that caused the adverse action against plaintiff.  Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996).  "Types of circumstantial evidence that can show a causal connection between the protected conduct and the alleged retaliation include temporal proximity, prior good discipline, finding of not guilty at the disciplinary hearing, and statements by defendants as to their motives." Barclay v. New York, 477 F. Supp. 2d 546, 588 (N.D.N.Y. 2007) (citations omitted).

> There is no bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship, so courts judge the permissible inferences that can be drawn from temporal proximity in the context of particular cases. However, courts have found that six and eight month gaps between the protected conduct and adverse action were sufficient, while in other circumstances three months was considered too long.

Burton v. Lynch, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009) (internal quotation marks and citations omitted).

However, courts must view retaliation claims with care and skepticism to avoid judicial intrusion into matters of prison administration.  Jackson v. Onondaga County, 549 F. Supp. 2d 204, 214-15 (N.D.N.Y. 2008).  Therefore, conclusory allegations alone are insufficient. Id. at 214 (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983) (explaining that "claim[s] supported by specific and detailed factual allegations . . . ought usually be pursued with full discovery.")).

Viewing the evidence in the light most favorable to Perez, he has sufficiently demonstrated a retaliation claim.  First, filing grievances is constitutionally protected conduct.  Second, the evidence in the record sufficiently demonstrates that filing the initial grievance against Rabideau caused the subsequent misbehavior reports.  Perez initially filed his grievance against Rabideau seven weeks before Mussen and Duquette issued the misbehavior reports, which is well within the time noted by courts to demonstrate temporal proximity.  Moreover, Duquette was present and participating in the alleged threats to Perez and subsequent assault on February 3.  During this alleged assault, Rabideau overtly threatened Perez just prior to Duquette throwing him to the ground and kicking him.  These threats also support Perez's claims of retaliation.  While Mussen was not present, both misbehavior reports were administratively reversed and expunged.  This also supports the contention that Perez's allegations that the misbehavior reports were false and retaliatory.

Accordingly, defendants' motion on this ground should be denied.


## 2. False Misbehavior Reports

Perez contends that he had multiple false misbehavior reports lodged against him throughout his incarceration.  An inmate has a right not to be deprived of a liberty interest

31

without due process.  However, a "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986)). "There must be more, such as retaliation against the prisoner for exercising a constitutional right." Boddie v. Schnieder, 105 F .3d 857, 862 (2d Cir.1997) (citing Franco v. Kelly, 854 F.2d 584, 588-90 (2d Cir. 1988)).  As discussed supra, Perez has raised issues of fact regarding the alleged retaliation claim.   Accordingly, defendants' motion on that ground should be denied.

## F. Failure to State a Claim

An action commenced pursuant to 42 U.S.C. § 1983 requires proof of the "deprivation of any right[], privilege[], or immunit[y] secured by the Constitution" or laws of the federal government.  42 U.S.C. § 1983.  Thus, no action lies under § 1983 unless a plaintiff has asserted the violation of a federal right.  See Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n, 453 U.S. 1, 19 (1981).

## 1. Access to Courts

In Perez's opposition papers, there are multiple references to the fact that Rabideau would not assist him in the law library and then precluded him from visiting the library after Perez filed a grievance against him.  "Prisoners . . .  have a constitutional right of access to the courts . . . ." Bourden v. Loughren, 386 F.3d 88, 92 (2d Cir. 2004) (internal quotation marks omitted) (citing Bounds v. Smith, 430 U.S. 817, 821-22 (1977) (citations omitted) (holding that all prisoners have a well-established Constitutional right to "adequate,

effective, and meaningful" access to courts).  This "requires prison authorities to assist

inmates in the preparation and filing of meaningful legal papers . . . ."  Bounds, 430 U.S. at

828.  In order to state a claim for denial of access to the courts, a plaintiff must allege "that

a defendant caused 'actual injury,' i.e., took or was responsible for actions that 'hindered [a

plaintiff's] efforts to pursue a legal claim.'"  Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003)

(citing Monsky v. Moraghan, 127 F.3d 243, 247 (2d Cir. 1997) (quoting Lewis v. Casey, 518

U.S. 343, 351 (1996)).  The injury must have been the result of the deliberate and malicious

behavior of a defendant.  Tajeddini v. Gluch, 942 F. Supp. 772, 780 (D. Conn. 1996).

    However, Perez fails to state which, if any, legal actions were prejudiced.  Conclusory

generalizations are insufficient to establish an actual injury.  See Lewis, 518 U.S. at 351

(giving examples of actual injury including inability to assert or continue a claim); Arce v.

Walker, 58 F. Supp. 2d 39, 43 (W.D.N.Y. 1999) ("[A] claim that prison practices kept a

prisoner from raising an argument or asserting a claim in his pleadings, in response to a

dispositive motion, or at trial would likely suffice to show harm," but claims that the prison

practice prevented the inmate from "ma[king] a more compelling or sophisticated argument

would not.").  Without identification of the underlying action which was prejudiced, actual

injury, and by extension a First Amendment violation, cannot be established.

See Christopher v. Harbury, 536 U.S. 403, 415 (2002) ("[T]he underlying cause of action . .

. is an element that must be described in the complaint, just as much as allegations must

describe the official acts frustrating the litigation.").

    Accordingly, defendants' motion on this ground as to Perez's claims for denial of access

to the courts should be granted.

33

## 2. Sixth Amendment

Perez also contends that his complaint alleges a violation of his Sixth Amendment rights. However, the Sixth Amendment pertains to criminal prosecutions and the right to a speedy trial with process for obtaining witnesses and acquiring representation. U.S. Const. amend. IV. As this case is civil and not criminal in nature and asserts no conduct by any federal employee, official, or entity, the Sixth Amendment does not apply. Accordingly, defendants' motion on this ground as to Perez's claims under the Sixth Amendment should be granted.

## G. Conspiracy[15]

In order to support a claim for conspiracy under §§ 1983 or 1985, there must be "(1) an agreement . . . ; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Ciambriello v. County of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002); Cusamano v. Sobek, 604 F. Supp. 2d 416, 468 (N.D.N.Y. 2009). An agreement must be proven with specificity as bare allegations of a conspiracy supported only by allegations of conduct easily explained as individual action is insufficient. See Iqbal v. Hasty, 490 F.3d 143,177 (2d Cir. 2007); see also Gyadu v. Hartford Ins. Co., 197 F.3d 590, 591 (2d Cir. 1999). Thus, plaintiffs must "make an effort to provide some details of time and place and the alleged effects of the conspiracy . . . [including] facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the

---

[15] Defendants also assert that any conspiracy claims are effectively barred by the intracorporate conspiracy doctrine. However, because it is recommended herein that defendants' motions as to the conspiracy claim be granted on other grounds, their motion based on the intracorporate conspiracy doctrine need not be addressed.

unlawful end." Warren v. Fischl, 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999) (citations omitted). While exact specifics are not required, "the pleadings must present facts tending to show agreement and concerted action." Anilao v. Spota, 774 F. Supp. 2d 457, 512-13 (E.D.N.Y. 2011) (citations omitted). Conclusory, vague, and general allegations are insufficient to support a conspiracy claim. Ciambriello, 292 F.3d at 325.

Here, Perez has failed to provide evidence sufficient to support a viable conspiracy claim between defendants Keysor and Miller in their alleged denials of due process during their respective disciplinary hearings. Perez's claims of conspiracy are solely conclusory. There is nothing in the record to establish that these defendants had any type of agreement between them. There were no allegations outlining with specificity when, why or how this alleged conspiracy occurred.

Accordingly, defendants' motion on this ground as to this conspiracy claim should be granted.

## H. Due Process

As a threshold matter, an inmate asserting a violation of his or her right to due process must establish the existence of a protected interest in life, liberty, or property. See Perry v. McDonald, 280 F.3d 159, 173 (2d Cir. 2001). To establish a protected liberty interest, a prisoner must satisfy the standard set forth in Sandin v. Conner, 515 U.S. 472, 483-84 (1995). This standard requires a prisoner to establish that the deprivation was atypical and significant in relation to ordinary prison life. Id. at 484; Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir.1999); Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir.1996). The fact that an inmate has been disciplined with a SHU confinement alone is insufficient to establish an atypical

and significant deprivation.  The Second Circuit has articulated a two-part test whereby the length of time a prisoner was held in SHU as well as "the conditions of the prisoner's confinement in SHU relative to the conditions of the general prison population" are to be considered.  Vasquez v. Coughlin, 2 F. Supp. 2d 255, 259 (N.D.N.Y.1998).  Where the period of confinement exceeds thirty days, "refined fact-finding" is required to resolve defendants' claims under Sandin.  Colon v. Howard, 215 F.3d 227, 230 (2d Cir. 2000); see also Davis v. Barrett, 576 F.3d 129, 133-34 (2d Cir. 2009) (finding questions of fact under Sandin where plaintiff spent sixty days in SHU).  Thus, as Perez was in SHU for approximately seven months, he spent far more than thirty days in confinement and questions of fact exist as to the liberty interest asserted.

Accordingly, defendants' motion on this ground should be denied.[16]

_____

[16] While inmates are not given "the full panoply of [due process] rights," they are still afforded procedural process.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  Prisoners are entitled to "advance written notice of charges . . . , a written statement by the factfinders of the evidence relied on and the reasons for disciplinary action, the right to call witnesses and present documentary evidence when doing so does not jeopardize institutional safety . . . and the right to counsel where the inmate is illiterate . . . ." Powell v. Ward, 392 F. Supp. 628, 629 (S.D.N.Y. 1975) (citations omitted).  In disciplinary settings, inmates requiring counsel may "seek the aide of a fellow inmate, or . . . have adequate substitute aid in the form of help from the staff of from a sufficiently competent inmate designated by the staff."  Wolff, 418 U.S. at 570.
In this case, Perez has claimed that he was denied (1) adequate assistance; (2) the ability to call witnesses and present his defense; and (3) an impartial hearing officer.  In support of these allegations, Perez included letters and appeals wherein he provides a detailed account of the evidence supporting his claims including the fact that, despite his requests, he was not provided a potentially exculpatory witness and the inconsistent testimony that was proffered which provided the basis for the finding of his guilt.  This suffices to state a plausible due process claim.

**I. State Law Intentional Torts**

New York courts have interpreted state law to establish for all intentional torts a one-year statute of limitations.  Lucas v. Novogratz, No. 01-CV-5445 (GEL), 2002 WL 31844913, at *6 (S.D.N.Y. Dec. 18, 2002) (citations omitted) (Dkt. No. 40-5 at 62-71).  It appears that Perez seeks to incorporate any state law assault claims into the present action.  Perez's state law claim accrued on February 3, 2009, the day of the alleged assault.  Thus, state law claims for intentional torts brought after February 3, 2010 are time barred.  Because the instant complaint was filed on May 3, 2010, such claims must be dismissed as the statute of limitations had already expired.  Defendants' motion as to this claim should be granted.

**J. Qualified Immunity**

Defendants claim that even if Perez's selected constitutional claims are substantiated, they are entitled to qualified immunity.  Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003).  However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified . . . immunity might still be available . . . if it was objectively reasonable for the public official to believe that his acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation.  Aiken, 236 F. Supp. 2d at 230.  Here, the second prong of the inquiry need only be addressed with regard to Perez's First Amendment retaliatory false misbehavior report claims and Due Process claims.  The second prong need not be addressed with respect to his First Amendment access to courts or Sixth Amendment claims because, as discussed supra, it has not been shown that defendants violated Perez's constitutional rights.

There is no question that it was well settled on May 3, 2010 that the (1) First Amendment provided inmates with freedom from retaliation, including in the form of a false misbehavior report (Bounds v. Smith, 430 U.S. 817, 824 (1977) ("[O]ur decisions have consistently required States to shoulder affirmative obligations to assure all prisoners meaningful access to the courts); Davis v. Goord, 320 F.3d 346, 352-53 (2d Cir. 2003) (evaluating retaliation claim because "the filing of grievances is a constitutionally protected activity.") and (2) Fourteenth Amendment accorded due process prior to atypical and significant hardships imposed on inmates facing restrictive confinement (Colon v. Howard, 215 F.3d 227, 230 (2d Cir. 2000) (citing Sandin, 515 U.S. 472).  Thus, accepting all of Perez's allegations as true, qualified immunity cannot be granted as to the defendants on these claims.

Accordingly, defendants' motion on this ground should be granted and denied as indicated above.

38

### III. "John/Jane Doe" Defendants

Among the defendants named in the complaint are six "John/Jane Doe" defendants. None of these defendants have been otherwise identified or served with process and have not otherwise appeared in the action.  Under Fed. R. Civ. P. 4(m),if service is not completed within 120 days after a complaint is filed, "the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant . . . . ").  The complaint here was filed in this district on May 3, 2010.  Dkt. No. 1.  Perez was granted leave to proceed in forma pauperis on July 26, 2010.  Dkt. No. 5.  This obligated the United States Marshals Service to complete service of process on Perez's behalf, but Perez retained the duty to advise the Marshals Service of the last known address of all defendants to facilitate completion of service.  More than 120 days have thus passed since the complaint was filed and the "John/Jane Doe" defendants have not been served with process or otherwise identified.  Accordingly, it is recommended that the complaint be dismissed without prejudice as to the six "John/Jane Doe" defendants.

### IV.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for summary judgment (Dkt. No. 40) be:

1. **GRANTED** as to:

A. Defendants Fischer, Artus, LeClaire, and Racette and that these defendants be terminated from the action;

B. Perez's claims of conspiracy against defendants Keysor and Miller; and

C.  Perez's First Amendment access to courts and Sixth Amendment claim; and

39

2. **DENIED** as to all other defendants and claims; and

It is further **RECOMMENDED** that the six "John/Jane Doe" defendants be **DISMISSED** without prejudice pursuant to Fed. R. Civ. P. 4(m).

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the . . . recommendation." N.Y.N.D.L.R. 72.1(c) (citing 28 U.S.C. § 636(b)(1)(B)-(C)).  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated: March 1, 2012
      Albany, New York

                                 United States Magistrate Judge

Westlaw.

$10 cv 518$

Not Reported in F.Supp.2d, 2007 WL 2903950 (N.D.N.Y.)
**(Cite as: 2007 WL 2903950 (N.D.N.Y.))**

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Michael CHAVIS, Plaintiff,
v.
Glenn S. GOORD, et al, Defendants.

No. 9:00-CV-01418 (LEK/DEP).
Oct. 1, 2007.

Michael Chavis, pro se.

Office of Attorney General, State of New York,
Senta B. Siuda, Esq., Assistant Attorney General,
of Counsel, Syracuse, NY, for Defendants.

### DECISION AND ORDER
LAWRENCE E. KAHN, U.S. District Judge.

*1 This matter comes before the Court following a Report-Recommendation filed on August 17, 2007 by the Honorable David E. Peebles, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and L.R. 72.3 of the Northern District of New York. Report-Rec. (Dkt. No. 60). After ten days from the service thereof, the Clerk has sent the entire file to the undersigned, including the objections by Plaintiff Michael Chavis, which were filed on September 4, 2007. Objections (Dkt. No. 61).

It is the duty of this Court to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). "A [district] judge ... may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id. This Court has considered the objections and has undertaken a de novo review of the record and has determined that the Report-Recommendation should be approved because, as stated therein, Plaintiff did not sufficiently exhaust his administrative remedies. Though Plaintiff may have provided substantive no-

tification of his claims to Defendants during his disciplinary hearings, he "did not fulfill his obligation to procedurally exhaust available remedies with regard to those claims." Report-Recommendation (Dkt. No. 60) at 24.

Accordingly, it is hereby

**ORDERED,** that the Report-Recommendation (Dkt. No. 60) is **APPROVED** and **ADOPTED** in its **ENTIRETY;** and it is further

**ORDERED,** that Defendants' Motion for summary judgment is **GRANTED;** and it is further

**ORDERED,** that Plaintiff's Complaint be **DISMISSED,** without prejudice; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED.**

MICHAEL CHAVIS,

Plaintiff,

v.

GLENN S. GOORD, Commissioner of D.O.C.S., et al.,

Defendants.

### REPORT AND RECOMMENDATION
DAVID E. PEEBLES, U.S. Magistrate Judge.

Plaintiff Michael Chavis, a New York State prison inmate who is proceeding pro se and in forma pauperis, has commenced this civil rights action pursuant to 42 U.S.C. § 1983 claiming deprivation of his constitutional rights at the hands of the defendants, including the former Commissioner of the New York State Department of Correctional Services ("DOCS") and several DOCS employees. In his complaint, plaintiff challenges a Sunday prison work assignment alleging, inter alia, that it in-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

$EX. 1$

Not Reported in F.Supp.2d, 2007 WL 2903950 (N.D.N.Y.)
(Cite as: 2007 WL 2903950 (N.D.N.Y.))

terfered with his First Amendment religious free exercise rights. Plaintiff additionally maintains that in retaliation for having asserted his protected rights he was issued two misbehavior reports, resulting in disciplinary keeplock confinement, and that in the process the defendants lost or confiscated certain of his personal property, including an income tax refund check.

In 2003 plaintiff's complaint was dismissed by this court, on motion by the defendants seeking entry of summary judgment, based upon the finding that plaintiff had failed to exhaust his administrative remedies with respect to his first claim and invocation of a "total exhaustion" requirement under which a mixed complaint, containing a combination of exhausted and unexhausted claims, was subject to dismissal.[FN1] That determination was later reversed by the Court of Appeals for the Second Circuit, following the issuance by that court in 2004 of a series of decisions addressing the issue of exhaustion, and the matter was remanded for further consideration, specifically for a determination of whether the plaintiff had adequately apprised prison officials of his claims during the course of defending against disciplinary charges stemming from his refusal to work.

> FN1. At the time of that determination this court, while noting a split of authority regarding the issue, had adopted a "total exhaustion" rule. See Law v. Bergamini, No. 01-CV-463 (LEK) (DEP), 2003 WL 133272, at *1 (N.D.N.Y. Jan. 14, 2003). The Supreme Court has since clarified that total exhaustion is not required and, consequently, a court presented with a mixed complaint need only dismiss the unexhausted claims contained within it. See Jones v. Bock, --- U.S. ----, 127 S.Ct. 910, 925-26 (2007); see also Ortiz v. McBride, 380 F.3d 649, 656 (2d Cir.2004).

*2 Having carefully considered the record now before the court in light of the Second Circuit's directive and intervening case law from both that court

and the United States Supreme Court, and with the benefit of supplemental briefing by the parties, I find that each of plaintiff's three claims remains unexhausted, and therefore recommend dismissal of plaintiff's complaint on this procedural basis.

I. BACKGROUND
At the times relevant to his claims the plaintiff was a New York State prison inmate entrusted to the custody of the DOCS, and assigned to the Oneida Correctional Facility ("Oneida"), located in Rome, New York. See generally Complaint (Dkt. No. 1) § 6. On the morning of September 12, 1999, a Sunday, plaintiff was ordered to work as a recreation aid at the facility. Id. Plaintiff refused to obey that directive, both on the basis that he was not scheduled to work on Sundays, and additionally asserting that the requirement interfered with the exercise of his chosen religion as a Baptist. Id.; see also Defendants' Exhibits (Dkt. No. 33) Exhs. A-K.

As a result of his refusal to work on that date and ensuing debate over the work assignment, Chavis was issued two misbehavior reports, both dated September 12, 1999. Defendants' Exhibits (Dkt. No. 33) Exhs. A & F. The first of those reports charged plaintiff with failure to obey a direct order (Disciplinary Rule 106.10), being out of place (Disciplinary Rule 109.10), and harassment of DOCS employees (Disciplinary Rule 107.11). Id. Exh. A. The second charge lodged in connection with the incident accused plaintiff of failing to obey a direct order (Disciplinary Rule 106.10), verbal harassment of DOCS employees (Disciplinary Rule 107.11), lying (Disciplinary Rule 107.20), and creating a disturbance (Disciplinary Rule 104.13). Id. Exh. F.

The issuance of those two disciplinary reports resulted in the convening of two separate disciplinary hearings. Defendants' Exhibits (Dkt. No. 33) Exh. A-F. The first of those two, a Tier III hearing, was held beginning on September 17, 1999 and continuing to September 23, 1999, with Corrections Captain Lane presiding as the hearing officer.[FN2] Defendants' Exhibits (Dkt. No. 33) Exh. H. That

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2903950 (N.D.N.Y.)
(Cite as: 2007 WL 2903950 (N.D.N.Y.))

hearing resulted in a finding of guilt on the charge of refusal to obey a direct order, but dismissal of the remaining three counts. Defendants' Exhibits (Dkt. No. 33) Exh. I. A period of forty-five days of keeplock confinement, with a corresponding loss of privileges, was imposed as a sanction for that violation. *Id.*

> FN2. The DOCS conducts three types of inmate disciplinary hearings. Tier I hearings address the least serious infractions, and can result in minor punishments such as the loss of recreation privileges. Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the Special Housing Unit (SHU). Tier III hearings concern the most serious violations, and could result in unlimited SHU confinement and the loss of "good time" credits. *See Hynes v. Squillace,* 143 F.3d 653, 655 (2d Cir.), *cert. denied,* 525 U.S. 907, 119 S.Ct. 246 (1998).

A Tier II hearing was conducted on September 24, 1999 by Corrections Lieutenant Almstead to address the second misbehavior report issued on September 12, 1999. Defendants' Exhibits (Dkt. No. 33) Exh. C. That hearing resulted in a finding of guilt on the first two charges, but acquittal with respect to the harassment claim. Defendants' Exhibits (Dkt. No. 33) Exh D. A penalty of thirty days of keeplock confinement, with a corresponding loss of various privileges, was ordered as a result of that finding. *Id.* The two sanction periods were designated to run consecutively. *Id.*

*3 Plaintiff appealed his Tier II hearing determination to defendant Melvin Hollins, the Superintendent at Oneida. Defendants' Exhibits (Dkt. No. 33) Exh. E. In that appeal, plaintiff complained principally that requiring him to work on the day in question violated state law exempting inmates from working on Sundays and holidays unless volunteering to do so, further asserting that he was disciplined for statements made regarding prison policies.

*Id.* Those arguments were rejected, and the hearing officer's determination was upheld by a decision rendered by the Superintendent on September 30, 1999 lacking in any analysis of plaintiff's contentions or elaboration regarding his rationale. *Id.*

The result of plaintiff's Tier III hearing was also appealed by Chavis; consistent with the controlling provisions of the applicable DOCS regulations, that appeal was taken directly to the Commissioner. Defendants' Exhibits (Dkt. No. 33) Exh. J. In that appeal, plaintiff argued that the order which he refused to follow violated state law and prison policies, as well as interfering with his beliefs as a Baptist. *Id.* That appeal resulted in the issuance on November 16, 1999 of a written determination by defendant Donald Selsky, the DOCS Director of Special Housing/Inmate Disciplinary Program, affirming the determination in all respects. Defendants' Exhibits (Dkt. No. 33) Exh. J.

As a result of the two disciplinary hearings, plaintiff remained in disciplinary confinement between October 12, 1999 and December 26, 1999. Defendants' Exhibits (Dkt. No. 33) Exhs. D, I. Plaintiff maintains that during that time his property was "ransacked", "confiscated", and in some cases "discarded". Complaint (Dkt. No. 1) § 7; *see also* Plaintiff's Memorandum (Dkt. No. 37) at 3. Among the items lost, according to the plaintiff, was an income tax overpayment refund check drawn on Chase Manhattan Bank. *Id.*

II. *PROCEDURAL HISTORY*

Plaintiff commenced this action on September 18, 2000 and was thereafter granted leave to proceed *in forma pauperis.* Dkt. Nos. 1, 4. Plaintiff's complaint asserts three causes of action, including 1) violation of his religious free exercise rights as guaranteed, *inter alia,* by the First and Fourteenth Amendments of the United States Constitution;[FN3] 2) unlawful retaliation based upon his having been disciplined for asserting constitutionally protected rights; and 3) confiscation by defendants of his property under color of state law. *Id.* Named in plaintiff's complaint as defendants are former

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2903950 (N.D.N.Y.)
(Cite as: 2007 WL 2903950 (N.D.N.Y.))

DOCS Commissioner Goord; OCF Superintendent Hollins; DOCS Director of Special Housing/Inmate Disciplinary Program Selsky; and Corrections Officers Dolan, Graveline, Campbell, and Wiley, all employed by the DOCS and stationed at Oneida.

> FN3. Plaintiff's complaint purports to assert a cause of action under the Religious Freedom Restoration Act of 1993, formerly codified in relevant part at 42 U.S.C. § 2000bb *et seq.* ("RFRA"). Unfortunately for the plaintiff, however, subsequent to its enactment the RFRA was stricken down as unconstitutional. *See Ford v. McGinnis,* 352 F.3d 582, 592 (2d Cir.2003).
>
> Liberally construed, plaintiff's complaint, while not specifically asserting such a cause of action, could be interpreted as supporting a cause of action under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), codified in relevant part at 42 U.S.C. § 2000cc(a) and 2000cc-1a(a). Because claims under the RLUIPA are similar to free exercise causes of action asserted under the First Amendment, although analyzed under a slightly different framework, *see Salhuddin v. Goord,* 467 F.3d 263, 264 (2d Cir.2006), and in any event are subject to the requirement of exhaustion, in light of the recommended disposition, I have not separately analyzed that cause of action or considered whether it is appropriately asserted in this case.

Following the joinder of issue, defendants moved on March 13, 2002 seeking entry of summary judgment dismissing plaintiff's complaint on a variety of grounds including, *inter alia,* failure to exhaust available internal administrative remedies. Dkt. Nos. 32-35. In response to that motion, which was opposed by the plaintiff, *see* Dkt. Nos. 36, 37, I issued a report and recommendation dated February

28, 2003 addressing defendants' request. Dkt. No. 41. In that report, I found that plaintiff had failed to satisfy his exhaustion obligation with regard to his first cause of action and, invoking a total exhaustion rule, recommended dismissal of all three of plaintiff's claims, thus finding it unnecessary to address the remaining arguments, most of which addressed the alleged substantive deficiencies of plaintiff's claims, as well as raising the issue of qualified immunity. *Id.* That report and recommendation was adopted by decision and order issued by District Judge Lawrence E. Kahn on March 26, 2003. Dkt. No. 43.

*4 Plaintiff appealed the resulting judgment to the United States Court of Appeals for the Second Circuit. After initially staying plaintiff's appeal based upon the pendency of several significant cases addressing the contours of the statutory exhaustion requirement on the basis of which plaintiff's complaint was dismissed, the Second Circuit issued a decision on March 1, 2005 vacating this court's determination and remanding the matter for further consideration, with the specific instruction that the court "determine whether [plaintiff's] allegations against the [defendants] in his disciplinary proceedings sufficed to put the [defendants] on notice and provide them time and opportunity to address the complaint internally, thereby rendering his claims exhausted." Second Circuit Mandate Dkt. No. 49 (citations omitted).

By decision and order subsequently issued by District Judge Kahn on June 20, 2006, the matter was returned to me for further consideration, following supplemental briefing by the parties. Dkt. No. 50. With the filing of supplemental memoranda on behalf of the defendants on February 16, 2007, Dkt. No. 58, and by the plaintiff filed on March 9, 2007, Dkt. No. 59, the matter is ripe for determination and is once again before me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See also* Fed.R.Civ.P 72(b).

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2903950 (N.D.N.Y.)
**(Cite as: 2007 WL 2903950 (N.D.N.Y.))**

III. *DISCUSSION*

A. *Summary Judgment Standard*

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,* 391 F.3d 77, 82-83 (2d Cir.2004). A fact is "material", for purposes of this inquiry, if "it might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Jeffreys v. City of New York,* 426 F.3d 549, 553 (2d Cir.2005) (citing *Anderson* ). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 620-21 (2d Cir.1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

*****5** When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson,* 477 U.S. at 250 n.4, 106 S.Ct. at 2511 n.4; *Security Ins.,* 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or

otherwise, that there is a material issue of fact for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party. *Jeffreys,* 426 F.3d at 553; *Wright v. Coughlin,* 132 F.3d 133, 137-38 (2d Cir.1998). Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." *Treglia v. Town of Manlius,* 313 F.3d 713, 719 (2d Cir.2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict.").

B. *Failure to Exhaust Administrative Remedies*

The record before the court firmly establishes, without contradiction, the plaintiff's failure to file a formal grievance with regard to any of the matters now asserted in his complaint. Plaintiff maintains that his claims nonetheless should survive the defendants' exhaustion challenge based upon the fact that he raised issues associated with his first two causes of action during the disciplinary proceedings at issue in the case, and his assertion that the loss of property claim is not grievable under the controlling provisions of the DOCS grievance program.

With an eye toward "reduc[ing] the quantity and improv[ing] the quality of prisoner suits[,]" *Porter v. Nussle,* 534 U.S. 516, 524, 122 S.Ct. 983, 988 (2002), Congress altered the inmate litigation landscape considerably through the enactment of the Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104-134, 110 Stat. 1321 (1996), imposing several restrictions on the ability of prisoners to maintain federal civil rights actions. An integral feature of the PLRA is a revitalized exhaustion of remedies provision which requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2903950 (N.D.N.Y.)
**(Cite as: 2007 WL 2903950 (N.D.N.Y.))**

other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo,* --- U.S. ----, 126 S.Ct. 2378, 2382 (2006); *Hargrove v. Riley,* No. CV-04-4587, 2007 WL 389003, at *5-6 (E.D.N.Y. Jan. 31, 2007). This limitation is intended to serve the dual purpose of affording "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court[,]" and to improve the quality of inmate suits filed through the production of a "useful administrative record." *Jones v. Bock,* --- U.S. ----, 127 S.Ct. 910, 914-15 (2007) (citations omitted); *see Woodford,* 126 S.Ct. at 2386; *see also Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir.2004). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532, 122 S.Ct. at 992 (citation omitted).

**\*6** The failure of a prisoner to satisfy the PLRA's exhaustion requirement is not jurisdictional, but instead gives rise to a defense which must affirmatively be raised by a defendant in response to an inmate suit. *Jones,* 127 S.Ct. at 918. In the event a defendant named in such an action establishes that the inmate plaintiff failed properly to exhaust available remedies prior to commencing the action, his or her complaint is subject to dismissal. *See Pettus v. McCoy,* No. 04-CV-0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also Woodford,* 126 S.Ct. at 2387-88 (holding that the PLRA requires "proper exhaustion" of available remedies). "Proper exhaustion" requires a plaintiff to procedurally exhaust his or her claims by "compl[ying] with the system's critical procedural rules." *Woodford,* 126 S.Ct. at 2388; *see also Macias v. Zenk,* 495 F .3d 37, 2007 WL 2127722, at *3 (2d Cir. July 26, 2007) (citing *Woodford* ). While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion "in a substant-

ive sense", an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his or her available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA. *Macias,* 2007 WL 2127722, at *3 (quoting *Johnson,* 380 F.3d at 697-98) (emphasis omitted).

In a series of decisions rendered since the enactment of the PLRA, the Second Circuit has crafted a three-part test for determining whether dismissal of an inmate plaintiff's complaint is warranted for failure to satisfy the PLRA's exhaustion requirement. *Macias,* 2007 WL 2127722, at *3; *see Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004). Under the prescribed algorithm, a court must first determine whether administrative remedies were available to the plaintiff at the relevant times. *Macias,* 2007 WL 2127722, at *3; *Hemphill,* 380 F.3d at 686. If such a remedy existed and was available, the court must next examine whether the defendants have forfeited the affirmative defense of non-exhaustion by failing to properly raise or preserve it or whether, through their own actions, by preventing the exhaustion of plaintiff's remedies, they should be estopped from asserting failure to exhaust as a defense. *Macias,* 2007 WL 2127722, at *3; *Hemphill,* 380 F.3d at 686. In the event the proffered defense survives these first two levels of scrutiny, the court lastly must examine whether special circumstances nonetheless exist and "have been plausibly alleged" to justify the plaintiff's failure to comply with the applicable administrative procedural requirements.[FN4] *Macias,* 2007 WL 2127722, at *3; *Hemphill,* 380 F.3d at 686.

> FN4. These three prongs of the prescribed test, though distinct, plainly admit of significant overlap. See *Hargrove v. Riley,* No. CV-04-4587, 2007 WL 389003, at *8 n.14 (E.D.N.Y. Jan. 31, 2007); *see also Giano v. Goord,* 380 F.3d 670, 677 n.6 (2d Cir.2004).

*1. Availability of Remedy*
New York prison inmates are subject to an In-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2903950 (N.D.N.Y.)
(Cite as: 2007 WL 2903950 (N.D.N.Y.))

mate Grievance Program ("IGP") established by the Department of Correctional Services ("DOCS"), and recognized as an "available" remedy for purposes of the PLRA. *See Mingues v. Nelson,* No. 96 CV 5396, 2004 WL 324898, at \*4 (S.D.N.Y. Feb. 20, 2004) (citing *Mojias v. Johnson,* 351 F.3d 606 (2d Cir.2003) and *Snider v. Melindez,* 199 F.3d 108, 112-13 (2d Cir.1999)). The IGP consists of a three-step review process. First, a written grievance is submitted to the Inmate Grievance Review Committee ("IGRC") within twenty-one days of the incident.[FN5] 7 N.Y.C.R.R. § 701.5(a). The IGRC, which is comprised of inmates and facility employees, then issues a determination regarding the grievance. *Id.* §§ 701.4(b), 701.5(b). If an appeal is filed, the superintendent of the facility next reviews the IGRC's determination and issues a decision. *Id.* § 701.5(c). The third level of the process affords the inmate the right to appeal the superintendent's ruling to the Central Office Review Committee ("CORC"), which makes the final administrative decision. *Id.* § 701.5(d). Ordinarily, absent the finding of a basis to excuse non-compliance with this prescribed process, only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to section 1983 in a federal court. *Reyes v. Punzal,* 206 F.Supp.2d 431, 432 (W.D.N .Y.2002) (citing, *inter alia, Sulton v. Greiner,* No. 00 Civ. 0727, 2000 WL 1809284, at \*3 (S.D.N.Y. Dec. 11, 2000)).

> FN5. The IGP supervisor may waive the grievance timeliness requirement due to "mitigating circumstances." 7 N.Y.C.R.R. § 701 .6(g)(1)(i)(a)-(b).

\*7 Despite an inmate's entitlement under most circumstances to file and pursue a grievance in accordance with the IGP, there are circumstances under which the grievance procedure nonetheless is deemed not to have been available to an inmate plaintiff. *See Hemphill,* 380 F.3d at 687-88. Thus, for example, "[e]xhaustion may be considered unavailable in situations where plaintiff is unaware of the grievance procedures or did not understand it, ...

or where defendants' behavior prevents plaintiff from seeking administrative remedies." *Hargrove,* 2007 WL 389003, at \*8 (citations omitted) (noting, for example, that a defendant's failure to advance plaintiff's grievances or the issuance of threats against an inmate to deter the filing of a grievance may effectively render the administrative process unavailable). When testing the availability of administrative remedies in the face of claims that undue influence from prison workers has caused a plaintiff inmate to forego the formal grievance process, courts employ an objective test, examining whether "a similarly situated individual of ordinary firmness [would] have deemed them available." *Id.* at 688 (internal quotations and citations omitted); *see Hargrove,* 2007 WL 389003, at \*8.

From a review of the record before the court, it appears that the claims now being raised by the plaintiff fall within the definition of grievable controversies under the IGP. While making no argument as to whether his First Amendment and retaliation claims were grievable under the IGP, plaintiff asserts that his third claim, alleging unlawful confiscation of his property, was not. Inmate property claims are governed by a separate DOCS Directive, # 2733, which outlines a two-step procedure for an inmate seeking restitution for property that is lost, damaged, or destroyed while the inmate is in the custody of the DOCS. N.Y. Dep't Corr. Serv. Dir. # 2733. In accordance with that prescribed procedure, an inmate must file an initial claim form with the Deputy Superintendent for Administration (DSA), or equivalent officer at the facility in which the inmate is housed. *Id.* A claim reviewer reviews the claim and communicates a decision to deny or approve the claim to the inmate. *Id.* If the claim reviewer denies the inmate's claim, he or she may appeal the decision. *Id.* Where the inmate must direct his appeal is based on the value of the property in the claim; appeals for claims up to $500 should be directed to the facility superintendent, while appeals for claims over $500 should be directed to the Division of Program Services, Office of Inmate Accounts. *Id.*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2903950 (N.D.N.Y.)
(Cite as: 2007 WL 2903950 (N.D.N.Y.))

While it is apparent from the language of the New York Code of Rules and Regulations, which codifies the IGP as described in DOCS Directive # 4040, that the IGRC may dismiss a grievance where the subject matter is more appropriately resolved through the property claim procedure described in Directive # 2733, the language does not compel the IGRC to do so. *See* N.Y. Comp.Codes R. & Regs. tit. 7, § 701.5. There is no clear direction from any of the New York district courts or the Second Circuit regarding whether property claims are the exclusive province of Directive # 2733, or whether such claims may be addressed if the three-step process articulated in Directive # 4040 is the first means of redress. *Anderson v. C.O. # ? ?8593 Pinto,* No. 01 Civ. 9615(LBS), 2002 WL 1585907, at *2 (S.D .N.Y. July 17, 2002) (finding that the plaintiff failed to exhaust his administrative remedies in a claim involving destruction of property because he failed to file a grievance alleging such destruction); *Cherry v. Selsky,* No. 99 Civ. 4636, 2000 WL 943436, at *7 (S.D.N.Y. July 7, 2000) (adopting a literal, textual interpretation of what issues are nongrievable under Directive # 4040).

**\*8** Regardless of this apparent dilemma, it is not determinative of the circumstances now before the court. Although the plaintiff in this case filed an appeal based on the findings at his superintendent's hearing, that appeal involved only a defense of his actions that gave rise to the superintendent's hearing and did not allege property damage subsequent to the hearing. It is therefore clear that those appeals are not sufficient to exhaust the administrative remedies for stolen or damaged property. Plaintiff has not argued that he filed a claim under Directive # 2733, although he seems to believe that Directive # 2733 would be controlling. Plaintiff's Supplemental Memorandum (Dkt. No. 59) at 2. Given that plaintiff has not exercised his rights under either Directive # 4040 or under Directive # 2733, however, he has not exhausted *any* administrative remedy with regard to his property claim. Accordingly, regardless of whether the claim is raised under the Fourth Amendment, asserting an

unlawful seizure, or the Fourteenth Amendment, alleging deprivation of property without due process, and notwithstanding the existence of a potential parallel claims procedure for asserting lost property claims, plaintiff's property loss claim is grievable under the IGP.[FN6]

> FN6. Fourth Amendment deprivation claims regarding unlawful seizure and confiscation of properties are subject to the requirement of exhaustion. *See, e.g., Boddie v. Bradley,* No. 99-CV-1016, 2006 WL 162996 (N.D.N.Y. Jan. 20, 2006) (McAvoy, J.), *aff'd,* No. 06-0899, 2007 WL595247 (2d Cir. Feb. 16, 2007) (unpublished).

Plaintiff has asserted no basis to conclude that through their actions the defendants improperly deterred his filing of a grievance, and the record discloses no basis for such a finding. Accordingly, I conclude that there was an administrative remedy available to the plaintiff in this case at the times relevant to his claims.

### 2. *Presentation of Defense/Estoppel*

The second prong of the *Hemphill* analysis focuses upon "whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Hemphill,* 380 F.3d at 686 (citations omitted). In their answer defendants have raised, and thus preserved, the affirmative defense of exhaustion of remedies. See Answer (Dkt. No. 14) ¶ 14. Because the defendants have properly raised exhaustion as a defense, and plaintiff does not assert any basis to estop them from pursuing it, I find that this prong of the exhaustion test does not come into play in this case.

### 3. *Special Circumstances*

The third, catchall factor to be considered under the Second Circuit's prescribed exhaustion rub-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

**Not Reported in F.Supp.2d, 2007 WL 2903950 (N.D.N.Y.)**
**(Cite as: 2007 WL 2903950 (N.D.N.Y.))**

ric focuses upon whether special circumstances have been plausibly alleged which, if demonstrated, would justify excusing a plaintiff's failure to exhaust administrative remedies. *Hemphill,* 380 F.3d at 689; *see also Giano v. Goord,* 380 F.3d 670, 676-77 (2d Cir.2004); *Hargrove,* 2007 WL 389003, at *10. Among the circumstances potentially qualifying as "special" under this prong of the test include where a plaintiff's reasonable interpretation of applicable regulations regarding the grievance process differs from that of prison officials and leads him or her to conclude that the dispute is not grievable. *Giano,* 380 F.3d at 676-77; *see also Hargrove,* 2007 WL 389003, at *10 (quoting and citing *Giano* ). This element is the principal focus of plaintiff's contention that his claims are not subject to dismissal for failure to exhaust.

**\*9** Plaintiff maintains that the prison officials at Oneida were adequately placed on notice of his free exercise and retaliation claims by virtue of his raising them during the course of two disciplinary hearings, and that those officials were thereby afforded an adequate opportunity to investigate and, if necessary, take remedial measures to address those alleged violations.[FN7]

> FN7. Aside from arguing that it is not grievable, plaintiff has offered no facts which would potentially constitute special circumstances excusing the requirement of exhausting his properly loss claim.

Since the issuance of the Second Circuit's mandate in this case the Supreme Court has reenforced the PLRA exhaustion requirement and held that 42 U.S.C. § 1997e(a) requires "proper exhaustion" of administrative remedies. *Woodford v. Ngo,* 126 S.Ct. at 2388; *see Macias,* 2007 WL127722, at *3. [FN8] The Second Circuit recently has emphasized that to be considered proper, exhaustion must occur in both a substantive sense, meaning that prison officials are somehow placed on notice of an inmate's complaint, and procedurally, in that it must be presented within the framework of some established procedure that would permit both investigation and,

if appropriate, remediation. *Macias,* 2007 WL 2127722, at *3.

> FN8. The Second Circuit has yet to address the ongoing viability of its *Hemphill* three-part test in light of the Supreme Court's decision in *Woodford. See Lawyer v. Gatto,* No. 03 Civ. 7577, 2007 WL 549440, at *4 n.4 (S.D.N.Y. Feb. 21, 2007); *Larkins v. Selsky,* No. 04 Civ. 5900, 2006 WL 3548096, at *9 n.4 (S.D.N.Y. Dec. 6, 2006). Several courts within the circuit have acknowledged uncertainty caused by the tension between *Hemphill* and *Woodford. See Hargrove v. Riley,* No. CV-04-4587, 2007 WL 389003, at *8 n.13 (E.D.N.Y. Jan. 31, 2007). It is clear from the court's subsequent decision in *Macias,* however, that the Second Circuit has at least partly retreated from its established exhaustion jurisprudence, recognizing the irreconcilable tension between *Woodford* and its earlier decision in *Braham v. Clancey,* 425 F.3d 177 (2d Cir.2005) and acknowledging that under *Woodford* mere notice to prison officials through informal channels, without more, does not suffice to satisfy the PLRA procedural exhaustion requirement. *Macias,* 2007 WL 2127722, at *6.

From a review of transcripts of plaintiff's disciplinary hearings, it appears that both the religious free exercise issue and his claim of retaliation were raised by the plaintiff during the course of those proceedings. While articulation of those issues during his disciplinary proceedings may have represented substantive exhaustion, by raising them in defense of the misbehavior reports at issue plaintiff did not fulfill his obligation to procedurally exhaust available remedies with regard to those claims. The focus of a disciplinary hearing is upon the conduct of the inmate, and not that of prison officials.[FN9] *Hairston v. LaMarche,* No. 05 Civ. 6642, 2006 WL 2309592, at *10 (S.D.N.Y. Aug. 10, 2006). While

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2903950 (N.D.N.Y.)
(Cite as: 2007 WL 2903950 (N.D.N.Y.))

the mention of a constitutional claim during plaintiff's disciplinary hearing could potentially have satisfied his substantive exhaustion requirement by virtue of his having notified prison officials of the nature of his claims, he did not fulfill his procedural exhaustion requirement by "compl[ying] with the system's critical procedural rules." *Woodford,* 126 S.Ct. at 2388; *Macias,* 2007 WL 2127722, at \*5-6; *see also Johnson,* 380 F.3d at 697-98. The mere utterance of his claims during the course of a disciplinary hearing does not obviate the requirement that he file a grievance setting forth a claim which is based upon the same or closely related facts. *Reynoso v. Swezey,* 423 F.Supp.2d 73, 74-75 (W.D.N.Y.2006).

> FN9. This distinction is well-illustrated by consideration of the charge accusing plaintiff of failure to obey an order. It is well-established that an inmate's failure to obey an inappropriate or even unlawful order of a prison official can nonetheless give rise to a finding that a disciplinary violation has occurred. *See David v. Goord,* 301 A.D.2d 1002, 1003, 753 N.Y.S.2d 409, 409 (3d Dep't 2003); *see also Thompson v. Selsky,* 289 A.D.2d 809, 809-10, 734 N.Y.S.2d 348, 349 (3d Dep't 2001). Accordingly, the question of whether the order that plaintiff work on the day in question ran afoul of his First Amendment rights was not necessarily relevant to the issues raised in the disciplinary hearings, and the hearing officer therefore lacked any incentive to investigate the claim. Thus, for example, toward the close of the Tier II hearing the hearing officer noted issues raised by the plaintiff under the New York Corrections Law and the Constitution, stating that they can be dealt with either in the appeal or in the further court process, adding: "We're not here to debate the law. We're to, to handle this ... specific misbehavior report." Defendants' Exhibits (Dkt. No. 33) Exh. C at 22. The

fact that the lawfulness *vel non* of the order was not an issue and did not provide a defense was also confirmed by the hearing officer during plaintiff's Tier III hearing. Defendants' Exhibits (Dkt. No. 33) Exh. H at 15.

In this regard the circumstances of this case are materially distinguishable from other circumstances where the raising of constitutional claims during a disciplinary hearing has resulted in thorough investigation of the matter by prison officials. *See, e.g., Hairston,* 2006 WL 2309592, at \*8-11. In this instance, there is nothing in the record to suggest that when the issues of interference with plaintiff's religious free exercise rights or alleged retaliation for having voiced his concerns were in any way investigated by prison officials.

**\*10** I note that this case is also readily distinguishable from circumstances where an inmate complains of procedural due process deprivations stemming from the disciplinary hearing process. *See, e.g., Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293 (1995); *Tellier v. Fields,* 280 F.3d 69, 79-80 (2d Cir.2000). Careful review of plaintiff's complaint, even when generously construed, fails to reveal the existence of such a due process claim; instead plaintiff's claims stem from facts which, while related, are independent of any alleged due process violation.[FN10] As such, plaintiff's contention that he properly pursued his claims through the disciplinary process is without merit.

> FN10. Given the fact that the two disciplinary hearings resulted in periods of disciplinary confinement of thirty and forty-five days, respectively, and in light of the lack of any other allegations of conditions which would represent significant and atypical deprivations in comparison to the conditions ordinarily incident to prison life, it is doubtful that plaintiff could establish the existence of a cognizable liberty interest sufficient to trigger the Fourteenth Amendment's due process requirements.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2903950 (N.D.N.Y.)
**(Cite as: 2007 WL 2903950 (N.D.N.Y.))**

> See Colon v. Howard, 215 F.3d 227, 231 (2d Cir.1999); see also Hynes, 143 F.3d at 658.

In sum, a careful review of the record in this matter reflects no special circumstances that would justify plaintiff's failure to exhaust administrative remedies before filing suit. By all accounts, plaintiff has been a prison inmate for many years, and his complaint discloses that this is not his first entry into the civil rights litigation arena. The circumstances of this case firmly reveal that the plaintiff has failed both to place prison officials on notice of his three distinct claims and to afford them the opportunity to redress his claims before being named as defendants in a federal civil rights action. As the Supreme Court has noted "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievance complies with the system's critical procedural rules." Woodford, 126 S.Ct. at 2388. Finding no basis to excuse the grievance requirement and reward plaintiff for his short circuiting of this important exhaustion mandate, I find that he has failed to satisfy that requirement with respect to each of his three claims and therefore recommend dismissal of his complaint.

### IV. SUMMARY AND RECOMMENDATION

While two of plaintiff's three claims depend upon facts somewhat aligned with the circumstances aired during his disciplinary hearing, the record in this case clearly demonstrates that plaintiff did not place prison officials on notice of his three claims in such a way as to allow them an adequate opportunity to investigate, and, if appropriate, remediate the matter, and thus plaintiff has not properly exhausted his claims. Under these circumstances dismissal of plaintiff's claims, however meritorious they may prove to be, is required under the PLRA's exhaustion provision. As the Supreme Court has noted, "[a] prisoner who does not want to participate in the prison grievance system will have

little incentive to comply with the system's procedural rules unless noncompliance carries a sanction ...." Woodford, 126 S.Ct. at 2388.

Based upon the foregoing, it is hereby

RECOMMENDED, that defendants' motion for summary judgment dismissing plaintiff's complaint (Dkt.Nos.32-35) be GRANTED, and plaintiff's complaint be DISMISSED in all respects, without prejudice.

*11 Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir.1993) (citing Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

The clerk is directed to promptly forward a copy of this order to the plaintiff by regular mail and defendant via electronic means.

N.D.N.Y.,2007.
Chavis v. Goord
Not Reported in F.Supp.2d, 2007 WL 2903950 (N.D.N.Y.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

*10 cv 518*

Westlaw.

119 Fed.Appx. 327, 2005 WL 18050 (C.A.2 (Conn.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 119 Fed.Appx. 327, 2005 WL 18050 (C.A.2 (Conn.)))**

This case was not selected for publication in the Federal Reporter.

United States Court of Appeals,
Second Circuit.
Michael EDWARDS, Plaintiff-Appellant,
v.
John TARASCIO, Warden, i/o, et al., Defendants-
Appellees.

No. 00-0074-PR.
Jan. 4, 2005.

**Background:** Inmate brought §1983 action against warden and corrections officers alleging violations of his Eighth and Fourteenth Amendment rights during a body and cavity search. The United States District Court for the District of Connecticut, Christopher F. Droney, J., 2000 WL 306607, granted defendants' motion for dismissal, and inmate ap- pealed.

**Holding:** The Court of Appeals held that remand was required to determine whether inmate's complaint to prison officials sufficed to put officials on notice and provided them with the time and an opportunity to address inmate's complaints internally, satisfying Prison Litigation Reform Act's (PLRA) requirement that he exhaust his administrative remedies prior to bringing §1983 action.
    Vacated and remanded.

West Headnotes

**Federal Courts 170B ☞947**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(L) Determination and Disposition of Cause
            170Bk943 Ordering New Trial or Other Proceeding
                170Bk947 k. Further Evidence, Find-

ings or Conclusions. Most Cited Cases
    (Formerly 98k6)

    Remand was required to determine whether inmate's complaint to prison officials about corrections officers' conduct during a body cavity search, which resulted in a formal investigation of his claims, sufficed to put officials on notice and provided them with time and an opportunity to address inmate's complaints internally, as required to satisfy Prison Litigation Reform Act's (PLRA) requirement that he exhaust his administrative remedies prior to bringing §1983 action against warden and corrections officers alleging violations of his Eighth and Fourteenth Amendment rights during the search. U.S.C.A. Const.Amends. 8, 14; 42 U.S.C.A. § 1983; Civil Rights of Institutionalized Persons Act, § 5, 42 U.S.C.A. § 1997c.

**\*327** Appeal from the United States District Court for the District of Connecticut (Droney, J.).Michael Edwards, MacDougal Correctional Facility Suffield, Connecticut, for Plaintiff-Appellant, pro se.

Lynn D. Wittenbrink, Attorney General's Office Hartford, Connecticut, for Defendants-Appellees.

Present: SOTOMAYOR and KATZMANN, Circuit Judges.

**\*328 SUMMARY ORDER**
**\*\*1** UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DE-CREED that the judgment of the district court is VACATED and the matter is remanded to the district court for further proceedings in light of this Court's decisions in *Giano v. Goord,* 380 F.3d 670 (2d Cir.2004), *Hemphill v. State of New York,* 380 F.3d 680 (2d Cir.2004), and *Johnson v. Testman,* 380 F.3d 691 (2d Cir.2004).

Plaintiff-appellant Michael Edwards, *pro se,*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

*EX. 2*

119 Fed.Appx. 327, 2005 WL 18050 (C.A.2 (Conn.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 119 Fed.Appx. 327, 2005 WL 18050 (C.A.2 (Conn.)))**

appeals from a district court judgment dismissing his 42 U.S.C. § 1983 complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to satisfy the exhaustion requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997c ("PLRA"). Edwards brought suit against Warden John Tarascio and Corrections Officers Saundry, Bolger, Mulligan, Sandy, Paradise and Lewis. *See* ROA Doc. 3 (Complaint). Previously, this Court entered an order staying Edwards's appeal pending this Court's decisions in *Abney v. McGinnis,* 380 F.3d 663 (2d Cir.2004), *Giano v. Goord,* 380 F.3d 670 (2d Cir.2004), *Hemphill v. New York,* 380 F.3d 680 (2d Cir.2004), *Johnson v. Testman,* 380 F.3d 691 (2d Cir.2004) and *Ortiz v. McBride,* 380 F.3d 649 (2d Cir.2004). On August 18, 2004, this Court issued decisions in all five cases.

In his complaint, Edwards claimed, *inter alia,* that the defendants-appellees violated his Eighth and Fourteenth Amendment rights during a January 1997 body and cavity search. *See id.* at 4. Specifically, Edwards alleged that: (1) corrections officers used excessive force and committed sexual assault, battery and negligence during the search; (2) the officers failed to check the sanction book to verify whether he was on "confined to quarters" status; (3) he was placed in punitive segregation for thirty days and improperly denied unspecified medical care; and (4) Warden Tarascio threatened him with additional sanctions if he continued to complain about the incident and also improperly failed to take administrative action against the corrections officers after being notified of the incident. *See id.* at 4-6.

**\*\*2** Edwards did not state in his complaint that he had exhausted his administrative remedies, nor did he attach a copy of any written grievance made by him. However, he did attach a February 1997 letter from Warden Tarascio to Edwards, which contained the subject line, "RE: Letter to Captain Peters for Investigation." *See id.,* Attachment 1. In this letter, Tarascio stated that his office was "in receipt of the investigation finding regarding your

claims of inappropriate staff behavior" and that a "review of the facility video tape surrounding your placement into the Restrictive Housing unit for interfering with safety and security reveal[ed]" that "[a]t no time was there inappropriate staff behavior." *Id.* The Warden's letter further stated that Edwards's claims of inappropriate treatment were unsubstantiated and instructed Edwards to direct any future issues to his counselor or unit manager. Second, Edwards attached a letter from his sister to Tarascio informing the Warden that Edwards had been physically and sexually assaulted by a corrections officer. *Id.,* Attachment 2. Third, Edwards included with his complaint a letter from Tarascio to Edwards's mother in which the Warden stated that Edwards had claimed that "staff had spit in his food and that he was sexually assaulted by staff via videotape ... these allegations will be looked into and if they prove false your son may be subject to disciplinary sanctions for false information." *Id.,* Attachment 3. Tarascio further stated that he would ask Captain Peters to review the matter, indicating **\*329** that Edwards's mother could contact the Warden by telephone. *See id.*

The defendants-appellees moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). Edwards was given an opportunity to respond to the motion, but failed to provide additional evidence that he had exhausted his administrative remedies. The district court granted the motion to dismiss "without prejudice to [Edwards] moving to reopen the case within thirty days based on a presentation of evidence that he exhausted his administrative remedies" and found that, although Tarascio's letter was attached to the complaint, there was "no indication that [Edwards] ever utilized the administrative grievance procedures that are available to prisoners in Connecticut to address the type of conduct at issue in this case." *See* ROA Doc. 33 at 2-3.[FN1]

> FN1. In February 2002, Edwards filed two motions to reopen the case and argued that, in his March 2000 motion to reopen, he had presented additional evidence that he

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

119 Fed.Appx. 327, 2005 WL 18050 (C.A.2 (Conn.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 119 Fed.Appx. 327, 2005 WL 18050 (C.A.2 (Conn.)))**

had exhausted his administrative remedies. *See* ROA Docs. 48 and 49 (Motions to Reopen). In September 2002, the district court denied the motions without prejudice and found that Edwards's February 2002 motions did not "present any evidence of ... exhaustion of administrative remedies." *See* ROA Doc. 51 (Order) at 2. Edwards has not filed a separate notice of appeal from the denials of these motions to reopen or for reconsideration and we do not address the district court's decision with respect to these motions. In any event, upon remand the district court will be free to reconsider these submissions in light of this summary order and the five exhaustion decisions issued on August 18, 2004 referenced above. *See Abney v. McGinnis,* 380 F.3d 663 (2d Cir.2004); *Giano,* 380 F.3d 670; *Hemphill,* 380 F.3d 680; *Johnson v. Testman,* 380 F.3d 691; *Ortiz v. McBride,* 380 F.3d 649 (2d Cir.2004).

We review *de novo* a district court's dismissal of a complaint pursuant to Fed.R.Civ.P. 12(b)(6). *See Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998). We accept all the material allegations of the complaint, and will not affirm a district court's dismissal unless it appears beyond doubt that a plaintiff can present no set of supporting facts that would entitle him to relief. *See Thompson v. Carter,* 284 F.3d 411, 416 (2d Cir.2002). This rule applies with "particular force" in cases where a plaintiff proceeds *pro se* or alleges civil rights violations. *See id.* (internal citations and quotation marks omitted). "[W]hen addressing a *pro se* complaint, a district court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *See id.* (internal citations and quotation marks omitted).

Warden Tarascio's letter to Edwards makes clear that, at a minimum, Edwards made some form of a complaint, resulting in a formal investigation

of the claims and a letter from the Warden detailing the results of the investigation. The district court's conclusion that Edwards's complaint should be dismissed because "there is no indication that [Edwards] ever utilized the administrative grievance procedures that are available to prisoners" runs contrary to this Court's holding in *Johnson* that uncounselled inmates cannot be expected to satisfy a standard more stringent than that of a notice pleading when navigating prison administrative procedures. *See Johnson,* 380 F.3d at 697 (observing that "[t]he PLRA's exhaustion requirement is designed to 'afford [ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case' " (quoting *Porter v. Nussle,* 534 U.S. 516, 524-25, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002))). We explained that "[w]hether or not Johnson's disciplinary appeals was enough to 'alert[ ] the prison to the nature*330 of the wrong for which redress is sought,' ... is not manifestly obvious," *id.* (quoting *Strong v. David,* 297 F.3d 646, 650 (7th Cir.2002)), and, therefore, remanded the issue to the district court for a determination, *see id.* As in *Johnson,* this Court is not in a position to determine whether or not the allegations raised by Edwards sufficed to notify the defendants of his grievance because the district court has not considered the issue. Accordingly, on remand, the district court shall determine whether Edwards's allegations sufficed to put the defendants on notice and provided defendants the time and an opportunity to address Edwards's complaints internally. *See id.* ("In order to exhaust ... inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures.").

**\*\*3** The Warden's correspondence attached to Edwards's complaint suggests that Edwards may have received multiple and potentially confusing messages with respect to the appropriate mechanisms of seeking redress, such as the instruction that Edwards should direct concerns to his counselor or unit manager, that sanctions might apply if Edwards pursued his complaint, that the Warden was

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

119 Fed.Appx. 327, 2005 WL 18050 (C.A.2 (Conn.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 119 Fed.Appx. 327, 2005 WL 18050 (C.A.2 (Conn.)))

triggering a more formal inquiry internally, and that future inquiries with respect to Edwards's allegations should be directed to him personally by telephone by Edwards's mother. Accordingly, if the district court concludes that Edwards's allegations did not suffice to exhaust his claims, the district court should further consider whether respondents are estopped or otherwise precluded from raising the defense of failure to exhaust, or whether Edwards was justified in his alleged failure to follow formal or further informal grievance procedures. *See Hemphill,* 380 F.3d at 686 (discerning three part inquiry into (1) whether the administrative remedies were in fact "available" to the prisoner, (2) whether defendants waived or are estopped from raising defense of failure to exhaust due to their own actions inhibiting the prisoner from filing a grievance, and (3) whether any alleged "special circumstances" "justif[ied]" the prisoner's failure to exhaust); *cf. Giano,* 380 F.3d at 678 (holding that prisoner justifiably failed to file an ordinary grievance when the prisoner reasonably believed that Department of Corrections regulations foreclosed such recourse).

For the reasons set forth above, the judgment of the district court is hereby VACATED and the matter is remanded for further proceedings in accordance with this order.

C.A.2 (Conn.),2005.
Edwards v. Tarascio
119 Fed.Appx. 327, 2005 WL 18050 (C.A.2 (Conn.))

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.   $JO \, CV \, 518$

Page 1

Not Reported in F.Supp.2d, 2005 WL 3164248 (E.D.N.Y.)
**(Cite as: 2005 WL 3164248 (E.D.N.Y.))**

Only the Westlaw citation is currently available.

United States District Court,
E.D. New York.
Derrick McCULLOUGH, Plaintiff,
v.
T. BURROUGHS, Correctional Officer, Arthur Kill
Correctional Facility; Mendez, Correctional Of-
ficer, Arthur Kill Correctional Facility, Defendants.

No. 04-CV-3216 FB LB.
Nov. 29, 2005.

Derrick McCullough, Marcy, NY, pro se.

Eliot Spitzer, Attorney General of the State of New
York, by Donald Paul Delaney, Esq., Assistant At-
torney General, New York, NY, for Defendants.

*MEMORANDUM & ORDER*
BLOCK, District Judge.
   *1 *Pro se* prisoner plaintiff, Derrick McCul-
lough ("McCullough"), brings this lawsuit under 42
U.S.C. § 1983 against defendants T. Burroughs
("Burroughs") and L. Mendez ("Mendez") [FN1] in
both their individual capacities and as officers of
Arthur Kill Correctional Facility ("Arthur Kill"),
[FN2] a division of New York State Department of
Correctional Services ("DOCS"). McCullough, a
former inmate at Arthur Kill, alleges, *inter alia*,
that the defendants assaulted him and seeks monet-
ary damages and injunctive relief.

>    FN1. The caption of the complaint lists the
>    defendant as "Mendez"; however, the body
>    of the complaint identifies the defendant as
>    "L. Mendez." Compl. at 1.

>    FN2. Although the caption of the com-
>    plaint does not specify the capacities in
>    which the defendants are being sued, the
>    body of the complaint notes that plaintiff is
>    suing the defendants in both their "official

and individual capacit[ies,]" Compl. at 3-4;
accordingly, the Court will treat the com-
plaint as against the defendants in both of
these capacities. *See Soto v. Schembri,* 960
F.Supp. 751, 755 (S.D.N.Y.1997) (treating
complaint as suing defendants in official
capacities because body of complaint re-
ferred to defendants in their official capa-
cities).

   Defendants move to dismiss the complaint un-
der Federal Rule of Civil Procedure 12(b)(6) on
the ground that McCullough has not exhausted his ad-
ministrative remedies as required by the Prisoner
Litigation Reform Act ("PLRA"), 42 U.S.C. §
1997e(a). Because both parties have presented ma-
terial outside the pleadings and McCullough has
construed the defendants' motion as one for sum-
mary judgment, *see* McCullough's Opp. to Defs.'
Motion at 1 (labeling his opposition as a response
to defendants' motion for summary judgment *and*
for dismissal), the Court will treats it as one for
summary judgment (defendants provided McCul-
lough with the requisite advisory notice pursuant to
Local Rule 12.1). *See Scott v. Gardner,* 287
F.Supp.2d 477, 485-86 (S.D.N.Y.2003) (sufficient
notice to treat motion to dismiss as one for sum-
mary judgment where defendants served Local Rule
12.1 notice on plaintiff); *see also Taylor v. New
York State Dep't of Corrs.,* 2004 WL 2979910, at
*4 (S.D.N.Y. Dec. 22, 2004) (treating motion to
dismiss as one for summary judgment where Local
Rule 12.1 notice served on *pro se* plaintiff).

   Preliminarily, the Court *sua sponte* dismisses
McCullough's claims for damages against the de-
fendants in their official capacities because they are
barred by the Eleventh Amendment,[FN3] *see Davis
v. New York,* 316 F.3d 93, 101 (2d Cir.2002) (citing
*Kentucky v. Graham,* 473 U.S. 159, 169 (1985) (a
claim for damages against state officials in their of-
ficial capacity is considered to be a claim against
the State and is therefore barred by the Eleventh
Amendment)); however, McCullough's claims for

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

EX. 3

Page 2

Not Reported in F.Supp.2d, 2005 WL 3164248 (E.D.N.Y.)
(Cite as: 2005 WL 3164248 (E.D.N.Y.))

prospective injunctive relief against the defendants in their official capacities are not barred by the Eleventh Amendment and therefore are not dismissed. *See Dube v. State Univ. of New York,* 900 F.2d 587, 595 (2d Cir.1990) ("On the other hand, a state official acting in his official capacity may be sued in a federal forum to enjoin conduct that violates the federal Constitution, notwithstanding the Eleventh Amendment bar."). For the following reasons, summary judgment is denied in all other respects.

> FN3. The Court may *sua sponte* dismiss a claim on the ground of Eleventh Amendment immunity because it affects subject matter jurisdiction. *See Atlantic Healthcare Benefits Trust v. Googins,* 2 F.3d 1, 4 (2d Cir.1993) (*sua sponte* raising Eleventh Amendment immunity "because it affects ... subject matter jurisdiction").

## BACKGROUND
### A. McCullough's Affidavits
The following is taken from two affidavits submitted by McCullough: (1) an affidavit attached to his complaint and (2) an affidavit submitted in opposition to the defendants' motion.

On April 9, 2004, the defendants accosted him and ordered him to place his hands on the wall. Burroughs then "pat frisk[ed]" and "vi[ ]ciously punched" him in his left side, McCullough Aff. in Supp. of Compl. ¶ 5-6; during the encounter, Burroughs screamed, "Do you have a fucking beef with me?" and threatened that the defendants would "get [him] sooner or later." *Id.* ¶ 8. While Burroughs was punching him, Mendez "attempted to block other inmates from seeing what was occurring." *Id.* ¶ 7. McCullough believed that the incident was "in retaliation for a harassment grievance [that he] had filed against ... Burroughs." *Id.* ¶ 9.

*2 McCullough admits that he never filed a grievance in regard to this incident, but offers, as a justification, that it was "because of bias acts already placed against [him]." Aff. in Opp. to Defendants' Mot. ¶ 11. He did, however, submit a

"formal complaint" to the superintendent of Arthur Kill and the Inspector General's ("IG") Office; furthermore, "[a] representative from the [IG]'s Office came to Arthur Kill to interview [him]." *Id.* ¶¶ 12-13. He also noted that the defendants have "constantly harassed" him and that, in the past, he had filed "[s]everal grievances against the defendants[.]" *Id.* ¶¶ 15-16.

### B. Defendants' Affidavit
The Director of the DOCS's Inmate Grievance Program ("IGP") submitted an affidavit averring that the Central Office Review Committee ("CORC"), a division of DOCS, had no record that McCullough had ever filed an appeal of any grievance. He did not state whether McCullough had ever filed a grievance of any kind. No other affidavits were submitted on the defendants' behalf.

## DISCUSSION
### I.
A district court must grant summary judgment "whenever it determines that there is no genuine issue of material fact to be tried." *Savino v. City of New York,* 331 F.3d 63, 71 (2d Cir.2003) (citing Fed.R.Civ.P. 56(c) and *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986)). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)). In considering a motion for summary judgment, the Court must "resolve all ambiguities and draw all factual inferences in favor of the nonmoving party." *Id.* (citing *Anderson,* 477 U.S. at 255). Moreover, "[w]here the non-moving party is proceeding *pro se,* the court must interpret that party's supporting papers liberally, that is, interpret them 'to raise the strongest arguments that they suggest.' " *Forsyth v. Federation Employment & Guidance Serv.,* 409 F.3d 565, 569 (2d Cir.2005) (quoting *Burgos v. Hopkins,* 14 F .3d 787 (2d Cir.1994)).

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42 U.SC. § 1983], or any other Federal law, by a prisoner con-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3164248 (E.D.N.Y.)
**(Cite as: 2005 WL 3164248 (E.D.N.Y.))**

fined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted[,]" 42 U.S.C. § 1997a(e); this exhaustion requirement applies "whether [a prisoner] allege[s] excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002). "[T]he burden of proving [McCullough]'s non-exhaustion rests upon defendants...." *Roland v. Murphy,* 289 F.Supp.2d 321, 323 (E.D.N.Y.2003); *see also Evans v. Jonathan,* 253 F.Supp.2d 505, 509 (W.D.N.Y.2003) ("The failure to comply with the PLRA's exhaustion requirement is viewed as an affirmative defense on which defendant bears the burden of proof." (citing *Jenkins v. Haubert,* 179 F.3d 19, 28-29 (2d Cir.1999)).

**A. NY DOCS Inmate Grievance Program ("IGP")**
    **\*3** The DOCS has a well-established three-step IGP to resolve inmate grievances. "First, the inmate files a level 1 grievance (either on an Inmate Grievance Complaint Form, or on plain paper if the form is not readily available) with the Inmate Grievance Resolution Committee ("IGRC"), which is composed of fellow inmates and prison officials[,]" *Hemphill v. New York,* 380 F.3d 680, 682 (2d Cir.2004); the level 1 grievance must be filed within fourteen days of the alleged incident. *See* 7 N.Y.C.R.R. § 701.7(a)(1).

    The IGRC must convene a hearing, if necessary, within seven working days, and issue a written decision within two days of the hearing. Next, the inmate has four days to appeal the IGRC decision to the superintendent of the facility, who must respond within ten days and must provide "simple directions" on how to appeal to the next level, the [CORC]. The inmate's final opportunity for resolution of his grievance is to appeal to the CORC within four working days of the superintendent's decision. The CORC then has 20 working days to render a decision. 7 N.Y.C.R.R. § 701.7(c)(4).

    *Hemphill,* 380 F.3d at 682. If any of the above steps is "not decided within the time lim-

it[specified]," it "may be appealed to the next step." [FN4] 7 N.Y.C.R.R. § 701.8.

    FN4. There is also an expedited grievance procedure for prisoners who, as in the present case, allege that they have been harassed or assaulted by correctional officers. *See* 7 N.Y.C.R.R. § 701.11. Under the regulation in place as of McCullough's alleged assault, it was unclear whether the expedited procedure altered the procedure for a prisoner to file a grievance; effective on April 14, 2004, five days after McCullough's alleged assault, the regulation was amended to provide that the prisoner should follow the same procedures set forth in the three-step IGP. *See* 7 N.Y.C.R.R. § 701.11(1) ("An inmate who wishes to file a grievance complaint that alleges employee harassment shall follow the procedures set forth in section 701.7(a)(1) of this Part [the three-step IGP set forth above].") Under the amended regulation, the expedited grievance procedure differs from the ordinary grievance procedure only in the amount of time that the Superintendent has to render a decision in regard to the grievance. *See* 7 N.Y.C.R.R. § 701.11. In light of the Court's denial of summary judgment, the Court need not concern itself with the nuances of the expedited grievance procedure before the amendment.

**B. Exceptions to the PLRA Exhaustion Requirement**
    The Second Circuit "has recognized that while the PLRA's exhaustion requirement is mandatory, certain caveats apply." *Giano v. Goord,* 380 F.3d 670, 677 (2d Cir.2004). First, in certain situations (such as when prison officials withhold a promised remedy), a court may deem the procedures not "available." *See id.* (citing, *inter alia, Abney v. McGinnis,* 380 F.3d 663 (2d Cir.2004)). Next, a prison official who inhibits a prisoner from using the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3164248 (E.D.N.Y.)
**(Cite as: 2005 WL 3164248 (E.D.N.Y.))**

grievance procedures may be estopped from invoking the exhaustion requirement. *See id.* (citing *Ziemba v. Wezner,* 366 F.3d 161 (2d Cir.2004)). Finally, " '[s]pecial circumstances' may exist that amount to a 'justification' for not complying with administrative procedural requirements." *Id.* (citing *Berry v. Kerik,* 366 F.3d 85, 88 (2d Cir.2004), and *Rodriguez v. Westchester County Jail Corr. Dep't,* 372 F.3d 485 (2d Cir.2004)).

Summary judgment must be denied because there are genuine issues of material facts as to: (1) whether grievance procedures were available to McCullough and (2) whether the defendants are estopped from raising the exhaustion defense.

**II.**

**A. Availability of Administrative Remedies**

In *Hemphill,* the Second Circuit addressed whether administrative remedies were "available" under facts that closely resemble those in the present case: there, the prisoner plaintiff alleged that several correctional officers had assaulted him and threatened him that he had "better drop" a claim that the officers believed he had filed; following the incident, the plaintiff wrote a letter to the superintendent stating that he intended to file "criminal charges" against the officers, but never filed a grievance with the IGRC. *See* 380 F.3d at 683-84, 686. The Second Circuit articulated that the proper test for determining whether ordinary grievance procedures were "available" was whether "a similarly situated individual of ordinary firmness [would] have deemed them available"; notably, it commented that "threats or other intimidation by prison officials may well deter a prisoner of 'ordinary firmness' from filing an internal grievance, but not from appealing directly to individuals in positions of greater authority within the prison system, or to external structures of authority such as state or federal courts." *Id.* at 688. Applying the test to the limited factual record before it, the circuit court remanded to the lower court to determine whether or not the grievance procedures were available to the plaintiff. *See id.*

*\*4* Similarly, in the present case, McCullough alleges that he was physically assaulted by the defendants in retaliation for his filing an earlier grievance; if true, it is certainly plausible that the assault would deter a person of ordinary firmness from using that same grievance process to grieve the instant claims; therefore, as in *Hemphill,* the Court cannot conclude at this stage that the normal grievance procedures were "available" to McCullough.

**B. Estoppel**

The Second Circuit also held in *Hemphill* that "prison officials' threats or other inhibiting conduct may estop defendants from asserting the affirmative defense of non-exhaustion." 380 F.3d at 688. "To establish equitable estoppel, the party claiming estoppel must show: (1) a misrepresentation by the opposing party; (2) reasonable reliance on that misrepresentation; and (3) detriment ." *Lewis v. Washington,* 300 F.3d 829, 834 (7th Cir.2002) (citation omitted). "When asserting equitable estoppel against the government, one must also prove affirmative misconduct." *Id.*

McCullough alleges that the April 9, 2004, assault occurred in retaliation for prior grievances that he had filed against Burroughs and that, during the assault, Burroughs expressly threatened that he would "get [him]." Implicit in Burroughs' words and actions was that Burroughs would again assault McCullough if he filed another grievance against Burroughs; thus, it was reasonable for McCullough to rely on Burroughs' threat and opt against filing a subsequent grievance. If these allegations are true, Burroughs would be estopped from raising this defense of non-exhaustion. In regard to Mendez, although McCullough does not assert that Mendez directly threatened him or retaliated against him for filing grievances, *cf. Barad v. Comstock,* 2005 WL 1579794, at *6 (W.D.N.Y. June 30, 2005) (no estoppel where individual defendants did not make threats against plaintiff), the Court cannot conclude in light of the limited record before it that Mendez is not similarly estopped. *See Liner v. Goord,* 310 F.Supp.2d 550, 554 (W.D.N.Y.2004) (denying mo-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 3164248 (E.D.N.Y.)
**(Cite as: 2005 WL 3164248 (E.D.N.Y.))**

tion for summary judgment because further factual development was required).

## CONCLUSION

Summary judgment is granted with respect to the claims for damages against the defendants in their official capacities and otherwise denied.

**SO ORDERED.**

E.D.N.Y.,2005.
McCullough v. Burroughs
Not Reported in F.Supp.2d, 2005 WL 3164248 (E.D.N.Y.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

10 cv 518

Not Reported in F.Supp.2d, 2010 WL 980273 (N.D.N.Y.)
(Cite as: 2010 WL 980273 (N.D.N.Y.))

Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial
staff and not assigned editorial enhancements.**

United States District Court,
N.D. New York.
Nelson RODRIGUEZ, Plaintiff,
v.
Donald SELSKY, Defendant.

No. 9:07-CV-0432 (LEK/DEP).
March 15, 2010.

Nelson Rodriguez, Attica, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General of the
State of New York, Aaron M. Baldwin, Esq., As-
sistant Attorney General, of Counsel, Albany, NY,
for Defendant.

### DECISION AND ORDER

LAWRENCE E. KAHN, District Judge.

*1 This matter comes before the Court follow-
ing a Report-Recommendation filed on February
25, 2010 by the Honorable David E. Peebles,
United States Magistrate Judge, pursuant to 28 U.S
.C. § 636(b) and L.R. 72.3 of the Northern District
of New York. Report-Rec. (Dkt. No. 54). After ten
days from the service thereof, the Clerk has sent the
entire file to the undersigned, including Defendant
Donald Selsky's Objections (Dkt. No. 55), which
were filed on March 2, 2010 and Plaintiff Nelson
Rodriguez's Objections, (Dkt. No. 56), which were
filed on March 11, 2010.

It is the duty of this Court to "make a de novo
determination of those portions of the report or spe-
cified proposed findings or recommendations to
which objection is made." 28 U.S.C. § 636(b). "A
[district] judge ... may accept, reject, or modify, in
whole or in part, the findings or recommendations
made by the magistrate judge." *Id.* This Court has

considered the parties' Objections (Dkt.Nos.55, 56)
and has undertaken a de novo review of the record
and has determined that the Report-Re-
commendation should be approved for the reasons
stated therein.

Accordingly, it is hereby

**ORDERED,** that the Report-Recommendation
(Dkt. No. 54) is **APPROVED** and **ADOPTED** in
its **ENTIRETY**; and it is further

**ORDERED,** that Defendant Selsky's Motion
for judgment on the pleadings (Dkt. No. 47) is
**DENIED,** and it is further

**ORDERED,** that the Clerk serve a copy of this
Order on all parties.

**IT IS SO ORDERED.**

*REPORT AND RECOMMENDATION*
DAVID E. PEEBLES, United States Magistrate
Judge.

Plaintiff Nelson Rodriguez, a prison inmate
who is proceeding *pro se* and *in forma pauperis,*
has commenced this action pursuant to 42 U.S.C. §
1983 alleging deprivation of his civil rights. In his
complaint, as amended, Rodriguez alleges that pris-
on officials at the facility in which he was confined
at the relevant times issued him a false misbehavior
report and denied him procedural due process dur-
ing the course of the ensuing disciplinary hearing.
[FN1] Plaintiff attributes defendants' actions to retali-
ation for his having filed a civil action against a
corrections employee who is not named as a de-
fendant in this action.

> FN1. As originally constituted, plaintiff's
> complaint recited other allegedly unlawful
> conduct, including that he was subjected to
> ongoing harassment, retaliation, and inter-
> ference with his access to the courts. As a
> result of a series of court interventions the
> claims in this action, which was com-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Ex. 4

Not Reported in F.Supp.2d, 2010 WL 980273 (N.D.N.Y.)
**(Cite as: 2010 WL 980273 (N.D.N.Y.))**

menced elsewhere but later transferred to this district, have been significantly narrowed.

At this juncture, all that remains in the case is plaintiff's claim against defendant Donald Selsky, the Director of Special Housing and Inmate Disciplinary Programs for the New York State Department of Correctional Services ("DOCS"), alleging violation of plaintiff's due process rights arising out of his disciplinary hearing and defendant Selsky's review of plaintiff's appeal of the disciplinary determination and affirmance of the finding of guilt, though with modification of the sentence imposed. Now that discovery in the action has closed, defendant Selsky has moved for judgment on the pleadings seeking dismissal of plaintiff's claims against him.

Defendant's motion presents an issue that has divided the courts of this circuit-that is, whether by reviewing a disciplinary determination allegedly infected by procedural due process violations defendant Selsky becomes sufficiently involved in the constitutional deprivation to support a finding of liability. After having carefully considered plaintiff's allegations in light of the arguments now raised, I have concluded that those district court decisions finding the requisite personal involvement under the circumstances presented are better-reasoned. Accordingly, I find that plaintiff has set forth a plausible cause of action for a due process violation against defendant Selsky and therefore recommend that his motion for judgment on the pleadings be denied.

I. *BACKGROUND*[FN2]

> FN2. In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's amended complaint, the contents of which have been accepted as true for purposes of the pending motion. *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 2200 (2007) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S.

544, 555-56, 127 S.Ct. 1955, 1965 (2007)); *see also Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1733, 1734 (1964).

**\*2** Plaintiff is a prison inmate entrusted to the custody of the DOCS; at the times relevant to his due process claim it appears that Rodriguez was housed in the Shawangunk Correctional Facility ("Shawangunk"), located in Wallkill, New York. *See generally* Amended Complaint (Dkt. No. 7); *see also* Complaint (Dkt. No. 1).[FN3]

> FN3. Defendant Selsky's motion is addressed to plaintiff's amended complaint, which was filed on June 26, 2007, and is the operative pleading currently before the court. Dkt. No. 7. Despite the fact that it has been superceded as a result of the filing of an amended complaint, *Harris v. City of New York,* 186 F.3d 243, 249 (2d Cir.1999), I have also referred to plaintiff's original complaint to assist in fleshing out the relevant background facts as it more clearly identifies the location of some of the relevant events. Plaintiff's amended complaint, for example, does not clearly allege where he was incarcerated when the wrongdoing now at issue occurred, whereas a review of his original complaint indicates that the relevant events occurred while plaintiff was incarcerated at Shawangunk.

Plaintiff alleges that on December 30, 2003, he was issued a false misbehavior report accusing him of disciplinary infractions and that Corrections Captain Connolly was principally responsible for its issuance and the false accusation upon which it was based. *See* Amended Complaint (Dkt. No. 7) ¶ 12. In that disciplinary report, which was not served upon him until January 2, 2004, plaintiff was charged with fighting, engaging in violent conduct, and participating in an action detrimental to the order of facility, all in violation of established prison rules. *Id.* ¶ 14. Shortly after the misbehavior report was issued, at the direction of defendant Connolly corrections officers escorted the plaintiff to the fa-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Mmm

Not Reported in F.Supp.2d, 2010 WL 980273 (N.D.N.Y.)
(Cite as: 2010 WL 980273 (N.D.N.Y.))

cility's hospital isolation room, purportedly for treatment of injuries that he sustained. *Id.* ¶ 13. The following day, without having yet been officially charged with any misconduct, plaintiff was placed in the facility's special housing unit ("SHU"), again at the direction of defendant Connolly. *Id.*

A disciplinary hearing was conducted, beginning on January 8, 2004, to address the misbehavior report. Amended Complaint (Dkt. No. 7) ¶ 15. During the course of that hearing plaintiff was served with yet another misbehavior report which, he alleges, was also fabricated. *Id.* Although plaintiff objected on the record to the late receipt of the newest misbehavior report, the hearing proceeded and continued until January 27, 2004. *Id.* ¶ 16. Plaintiff maintains that during the course of the hearing he presented "overwhelming evidence" supporting his claim of fabrication and his theory that corrections officials, along with certain inmates, conspired to set him up, allegedly on orders from defendant Connolly. *Id.* According to the plaintiff, in light of that evidence defendant Wright, the author of one of the misbehavior reports, was prepared to drop the charges against him, but the hearing was nonetheless reinstated on order of defendant Connolly. *Id.* ¶ 17.

Plaintiff contends that during the course of the hearing Corrections Counselor Roddy, who was apparently assigned to assist him, exhibited bias, acted unprofessionally, and refused to provide him with requested documents. Amended Complaint (Dkt. No. 7) ¶ 18. According to Rodriguez, defendant Roddy threatened that if he continued to request further assistance from her she would "write him up for harassment". *Id.* Plaintiff's amended complaint alleges that he was denied the right to adequately prepare a meaningful defense to the charges against him and that he was deprived of a fair and impartial hearing by defendant John Ewanciw, the hearing officer, who was biased and involved in the "set up" against him. *Id.* ¶¶ 19-20. Plaintiff maintains that all of the defendants' actions were taken in retaliation for his having commenced a civil action

against another DOCS employee, Lieutenant Schneider. *Id.* ¶ 19.

**\*3** Although plaintiff's complaint, as amended, does not provide a great deal of detail regarding the hearing outcome, it appears that following the disciplinary hearing he was found guilty of one or more of the charges lodged against him and sentenced to a term of two years of disciplinary SHU confinement. *See* Amended Complaint (Dkt. No. 7) ¶ 21. Plaintiff appealed his disciplinary conviction to both defendant Michael McGinnis, the superintendent at the Southport Correctional Facility, and defendant Selsky. *Id.* ¶ 21. In those appeals, plaintiff reiterated his argument that the misbehavior reports lodged against him were fabricated, that the subsequent disciplinary hearing was unfair, and that the hearing officer's packet was missing "pertinent documentary evidence that the plaintiff had submitted as evidence" which would have refuted the charges leveled against him. *Id.* Though the finding of guilt on the charges was affirmed, plaintiff's appeal to defendant Selsky resulted in a reduction of the term of SHU confinement from two years to one. *Id.*

## II. PROCEDURAL HISTORY

This action was filed on April 11, 2007 in the Southern District of New York, but was subsequently transferred to this district by order issued by Chief District Judge Kimba M. Wood on April 11, 2007 .[FN4] Dkt. Nos. 1, 3. Plaintiff's original complaint challenged not only the misbehavior report and disciplinary action that ensued but also chronicled continued harassment and acts of retaliation that he experienced following his transfer into the Attica Correctional Facility, naming as defendants several DOCS employees including Donald Selsky. *Id.* Upon transfer of the case to this district and the court's initial review of plaintiff's complaint and accompanying request for leave to proceed *in forma pauperis* ("IFP"), by order dated May 17, 2007 Senior District Judge Lawrence E. Kahn granted plaintiff IFP status but directed that he file an amended complaint, noting several deficiencies in

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 980273 (N.D.N.Y.)
(Cite as: 2010 WL 980273 (N.D.N.Y.))

Page 4

the original pleading including, *inter alia,* the apparent untimeliness of certain of his claims. Dkt. No. 5.

> FN4. While plaintiff's complaint was not filed in the Southern District until April 11, 2007, the transfer order issued by Chief Judge Wood noted that the complaint was received in that district on February 26, 2007. *See* Dkt. No. 3, n. 1.

In accordance with the court's directive, plaintiff filed an amended complaint on June 26, 2007. Dkt. No. 7. Upon review of that pleading District Judge Kahn issued an order on July 19, 2007 accepting plaintiff's amended complaint for filing, but dismissed his claims against the majority of the defendants as time-barred and further directing dismissal of plaintiff's claims against a newly added defendant, Corrections Sergeant Corcran, without prejudice to plaintiff's right to file a separate action against that defendant in the Western District of New York.[FN5] As a result, Donald Selsky was left as the sole remaining defendant in the action.

> FN5. District Judge Kahn explained that "[s]ince the alleged wrongdoing by Defendant Corcran occurred in the Western District of New York, and Plaintiff's claims against Defendant Corcran are very recent, and thus not in jeopardy of being time-barred at this time, the Court will dismiss Defendant Corcran from the action, without prejudice to Plaintiff filing his claims against Defendant Corcran in the Western District of New York." Dkt. No. 8 at p. 3.

After filing an answer generally denying plaintiff's allegations against him and asserting various affirmative defenses, Dkt. No. 10, on March 5, 2009 defendant Selsky moved pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings, urging dismissal of plaintiff's amended complaint on the ground that

plaintiff has failed to allege that he was personally involved in any wrongdoing.[FN6] Dkt. No. 47. Plaintiff has since opposed the motion, Dkt. No. 50, prompting submission by the defendant of a reply to plaintiff's response, Dkt. No. 51, and a surreply by the plaintiff. Dkt. No. 53. Defendant's motion, which is now fully briefed and ripe for determination, has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See also* Fed.R.Civ.P. 72(b).

> FN6. At defendant's request the dispositive motion filing deadline in this case has been held in abeyance, and the court has granted defendant's request for leave to file a summary judgment motion in the event that his motion for judgment on the pleadings is denied. *See* Dkt. No. 48 and Text Entry Dated March 9, 2009.

III. *DISCUSSION*

A. *Standard of Review*

**\*4** Defendant's motion is brought pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, which governs the entry of judgment on the pleadings. [FN7] When analyzing a Rule 12(c) motion, I must apply the same standard as that applicable to a motion under Rule 12(b)(6). *See, e.g., Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994); *Wynn v. Uhler,* 941 F.Supp. 28, 29 (N.D.N.Y.1996) (Pooler, J.).

> FN7. Rule 12(c) provides that "[a]fter the pleadings are closed-but early enough not to delay trial-a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). Rule 12(d) further mandates that:
>
> [i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 5

Not Reported in F.Supp.2d, 2010 WL 980273 (N.D.N.Y.)
**(Cite as: 2010 WL 980273 (N.D.N.Y.))**

All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed.R.Civ.P. 12(d).

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1733, 1734 (1964); *Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 300 (2d Cir.), *cert. denied,* 540 U.S. 823, 124 S.Ct. 153 (2003); *Burke v. Gregory,* 356 F.Supp.2d 179, 182 (N.D.N.Y.2005) (Kahn, J.). The burden undertaken by a party requesting dismissal of a complaint under Rule 12(b)(6) is substantial; the question presented by such a motion "is not whether [the] plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims.' " *Log On America, Inc. v. Promethean Asset Mgmt. L.L.C.,* 223 F.Supp.2d 435, 441 (S.D.N.Y.2001) (quoting *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995)) (citations and quotations omitted). Accordingly, a complaint should be dismissed on a motion brought pursuant to Rule 12(b)(6) only where the plaintiff has failed to provide some basis for the allegations that support the elements of his or her claim. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 563, 570, 127 S.Ct. 1955, 1969, 1974 (2007); *see also Patane v. Clark,* 508 F.3d 106, 111-12 (2d Cir.2007) ("In order to withstand a motion to dismiss, a complaint must plead 'enough facts to state a claim for relief that is plausible on its face.' ") (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. at 1974). "While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.' " *In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir.2007) (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. at 1974).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 2200 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292 (1976)) (" '[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' ") (internal quotations omitted); *Davis v. Goord,* 320 F.3d 346, 350 (2d Cir.2003) (citation omitted); *Donhauser v. Goord,* 314 F.Supp.2d 119, 121 (N.D.N.Y.2004) (Hurd, J.). In the event of a perceived deficiency in a pro se plaintiff's complaint, a court should not dismiss without granting leave to amend at least once if there is any indication that a valid claim might be stated. *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991); *see also* Fed.R.Civ.P. 15(a) ("The court should freely give leave [to amend] when justice so requires.").

*B. Personal Involvement*

**\*5** In his motion defendant Selsky maintains that plaintiff's amended complaint fails to allege facts showing that he was personally involved in the alleged due process violation, and does not support a finding of liability against him. Defendant Selsky argues that the mere fact that he reviewed and affirmed the hearing officer's findings, without more, is insufficient to demonstrate his personal involvement in any alleged due process violations that may have occurred during the course of the disciplinary hearing.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282 (1978)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson,* 790

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 6

Not Reported in F.Supp.2d, 2010 WL 980273 (N.D.N.Y.)
**(Cite as: 2010 WL 980273 (N.D.N.Y.))**

F.2d 260, 263 (2d Cir.1986).

A supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor; there is no *respondeat superior* liability under section 1983. *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501. Culpability on the part of a supervisory official for a civil rights violation can, however, be established in one of several ways, including when that individual 1) has directly participated in the challenged conduct; 2) after learning of the violation through a report or appeal, has failed to remedy the wrong; 3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) was grossly negligent in managing the subordinates who caused the unlawful event; or 5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty,* 490 F.3d 143, 152-53 (2d Cir.2007); *see also Richardson,* 347 F.3d at 435; *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *Wright,* 21 F.3d at 501.

Defendant Selsky's participation in the relevant events, including his review on appeal of the disciplinary hearing and determination, would seem to bring him squarely within the second of the five above-stated potential grounds for establishing personal involvement on the part of a supervisory employee. Despite this, some courts have found that the mere allegation that Selsky has reviewed and affirmed a hearing officer's disciplinary determination is insufficient to show the requisite personal involvement in the alleged underlying constitutional violation. *See, e.g., Abdur-Raheem v. Selsky,* 598 F.Supp.2d 367, 370 (W.D.N.Y.2009) ("The only allegation concerning Selsky in the case at bar is that he affirmed the disposition of plaintiff's administrative segregation hearing, pursuant to which plaintiff was confined to SHU.... That is not enough to establish Selsky's personal involvement."); *Ramsey v. Goord,* No. 05-CV-47A, 2005 WL 2000144, at *6 (W.D.N.Y. Aug. 13, 2005) ("[t]he fact that Commissioner Goord and SHU Director Selsky, as officials in the DOCS 'chain of command,' af-

firmed defendant Ryerson's determination on appeal is not enough to establish personal involvement of their part ."); [FN8] *see also Odom v. Calero,* No. 06 Civ. 15527, 2008 WL 2735868, at *7 (S.D.N.Y. Jul. 10, 2008) (concluding that a due process violation is complete upon the hearing officer rendering a decision, even when the liberty interest deprivation persists, and therefore is not "ongoing" when an appeal is taken to Donald Selsky).

> FN8. Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

*6 On the other hand, other courts have found that the act of reviewing and affirming a determination on appeal can provide a sufficient basis to find the necessary personal involvement of a supervisory employee like defendant Selsky. *See, e.g., Baez v. Harris,* No. 9:01-CV-807, 2007 WL 446015, at *2 (N.D.N.Y. Feb. 7, 2007) (Mordue, C.J.) (fact that defendant Selsky responds personally to all disciplinary appeals by inmates found sufficient to withstand summary judgment motion based on lack of personal involvement); *Cepeda v. Coughlin,* 785 F.Supp. 385, 391 (S.D.N.Y.1992) ("The Complaint alleges that '[t]he Commissioner and/or his designee entertained plaintiff[']s appeal and also affirmed.' ... [T]he allegation that supervisory personnel learned of alleged misconduct on appeal yet failed to correct it constitutes an allegation of personal participation. Assuming that this allegation is true, as this court must on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) ..., Cepeda has pleaded personal involvement by Commissioner Coughlin sufficiently to withstand this motion."); *Johnson v. Coombe,* 156 F.Supp.2d 273, 278 (S.D.N.Y.2001) (finding that plaintiff's complaint had sufficiently alleged personal involvement of Superintendent and Commissioner to withstand motion to dismiss because plaintiff alleged that both defendants had actual or constructive notice of the defect in the underlying hearing); *Ciaprazi v. Goord,* No. 9:02-CV-0915, Report-Re-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 980273 (N.D.N.Y.)
**(Cite as: 2010 WL 980273 (N.D.N.Y.))**

commendation, 2005 WL 3531464, at *16 (N.D.N.Y. Mar. 14, 2004) (Peebles, M.J.) (recommending that Selsky's motion for summary judgment for lack of personal involvement be denied because Selsky's review of plaintiff's disciplinary hearing appeal "sufficiently establishes his personal involvement in any alleged due process violations based upon his being positioned to discern and remedy the ongoing effects of any such violations."), *adopted,* 2005 WL 3531464, at *1-2 (N.D.N.Y. Dec. 22, 2005) (Sharpe, J.).

Those cases concluding that a plaintiff's allegations that defendant Selsky reviewed and upheld an alleged constitutionally suspect disciplinary determination are enough to show his personal involvement in the alleged violation appear to be both better reasoned and more consistent with the Second Circuit's position regarding personal involvement. *See Black v. Coughlin,* 76 F.3d 72, 75 (2d Cir.1996) (criticizing a district court's denial of leave to amend to add Donald Selsky as a defendant in a due process setting and appearing to assume that Selsky's role in reviewing and affirming a disciplinary determination is sufficient to establish his personal involvement). While it may be true that the due process violations cited by Rodriguez occurred and were no longer ongoing when his appeal was taken to defendant Selsky, because it appears that the sentence imposed was still being served at the time of his review the liberty interest deprivation alleged to have effectuated without due process was therefore ongoing, and defendant Selsky was in a position to remedy the violation, at least in part, at a time when his intervention would still have been meaningful.[FN9]

> FN9. It should be noted that in this case plaintiff goes beyond merely alleging defendant Selsky's failure to rectify a past due process violation. In his complaint plaintiff also alleges that defendant Selsky participated in or furthered the violation by failing to conduct an appropriate review. Amended Complaint (Dkt. No. 7) ¶ 21.

[Editor's Note: Appended decisions deleted for Westlaw purposes.]

*7 In sum, having reviewed plaintiff's allegations and accepted them as true, I find that plaintiff has alleged sufficient facts to demonstrate a plausible due process claim and the requisite personal involvement in the violation by defendant Selsky.

IV. *SUMMARY AND RECOMMENDATION*
Plaintiff's complaint alleges that on his appeal of a disciplinary determination that was infected by procedural due process violations defendant Selsky failed to perform a proper investigation of plaintiff's claims and remedy the unconstitutional conduct that had occurred. Taken as true, these facts could establish that Selsky was aware of and failed to remedy a constitutional violation. At this juncture, plaintiff has therefore sufficiently set forth facts demonstrating defendant Selsky's personal involvement in an alleged Fourteenth Amendment violation. Accordingly, it is hereby respectfully

RECOMMENDED that defendant Selsky's motion for judgment on the pleadings (Dkt. No. 47) be DENIED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court within FOURTEEN days. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

N.D.N.Y.,2010.
Rodriguez v. Selsky
Not Reported in F.Supp.2d, 2010 WL 980273 (N.D.N.Y.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.