**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

CARLOS PEREZ,

                                        Plaintiff,

        v.                                                      No. 9:10-CV-518
                                                                (TJM/CFH)

RAYMOND FURINA, et al.,

                                        Defendant.

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**APPEARANCES:**                              **OF COUNSEL:**

CHARNY & ASSOCIATES                 NATHANIEL K. CHARNY, ESQ.
9 West Market Street, Ste. B
Rhinebeck, New York 12572
Attorneys for Plaintiff

Office of the New York State Attorney      GREGORY J. RODRIGUEZ, ESQ.
  General Eric T. Schneiderman             BRUCE J. BOIVIN, ESQ.
The Capitol                                NICOLE E. HAIMSON, ESQ.
Albany, New York 12224
Attorneys for Defendants


## REPORT-RECOMMENDATION AND ORDER[1]

### I. BACKGROUND

        Plaintiff Carlos Perez ("Perez"), an inmate in the custody of the New York State

Department of Corrections and Community Supervision ("DOCCS"), commenced this

action pursuant to 42 U.S.C. § 1983 alleging that defendants, thirteen named DOCCS

---

        [1]  This matter was referred to the undersigned for Report and Recommendation pursuant to 28
U.S.C. 636 (b) and N.D.N.Y. L.R. 72.3(c).

employees and six "John/Jane Doe" defendants violated his constitutional rights under the First, Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States. Compl. (Dkt. No. 1). On August 8, 2011, defendants filed a motion for summary judgment pursuant to Federal Rules of Civil Procedure ("FED. R. CIV. P.") 56. Dkt. No. 40. On September 23, 2011, Perez filed opposition to that motion. Dkt. No. 45. Defendants filed a reply. Dkt. No. 46.

On March 1, 2012, the undersigned issued a Report-Recommendation and Order recommending a grant of summary judgment to defendants Fischer, Artus, LeClaire, and Racette, and terminating those defendants from this action. Dkt. No. 48 at 39-40. The undersigned further recommended that summary judgment be granted dismissing Perez's claims of conspiracy against defendants Keysor and Miller, as well as Perez's First Amendment access to the courts and Sixth Amendment claims. Id. The undersigned recommended dismissal of the six "John/Jane Doe" defendants without prejudice. Id. Perez filed objections to the Report-Recommendation and Order. Dkt. No. 49. On March 30, 2012, the Report-Recommendation and Order was adopted in its entirety by Senior U.S. District Judge McAvoy. Dkt. No. 51.

On December 20, 2012, defendants filed a second motion for summary judgment. Dkt. No. 77. On January 7, 2013, Perez filed a response in opposition to the motion for summary judgment. Dkt. No. 82. On July 15, 2013, Perez filed a supplemental response. Dkt. No. 95. By Report-Recommendation and Order dated July 25, 2013, the undersigned recommended that all of Perez's claims be dismissed except for his (1) Eighth Amendment excessive force claims against defendants

2

Rabideau, Duquette, St. Louis, Furina, and Tousignant, and (2) the Eighth Amendment medical indifference claims against defendants Furina and Tousignant.  Dkt. No. 99. Perez filed objections to the Report-Recommendation.  Dkt. No. 101.  On September 30, 2013, District Judge McAvoy adopted the Report-Recommendation and Order in its entirety.  Dkt. No. 102.

By letter dated March 18, 2015, defendants requested that the Court conduct a hearing pursuant to <u>Messa v. Goord</u>, 652 F.3d 305, 308-10 (2d Cir. 2011), to determine if Perez exhausted his administrative remedies for his claims of excessive force and medical indifference.[2]  Dkt. No. 129.  The evidentiary hearing was conducted on June 17, 2015 and July 22, 2015.  Dkt. Nos. 159/167-1 ("June Tr."); 160/167-2 ("July Tr.").  At the close of the hearing, the undersigned reserved decision.  July Tr. at 58.

## II.  DISCUSSION

### A.  Relevant Law

### 1. Inmate Grievance Procedure

Under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. 1997(e)(a), an inmate must exhaust all administrative remedies prior to bringing any suits challenging his conditions of confinement, including federal civil rights cases.  <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002); <u>see also</u> <u>Woodford v. Ngo</u>, 548 U.S. 81, 83 (2006).  This exhaustion requirement applies to all prison conditions claims.  <u>Porter</u>, 534 at 524.

---

[2]  On April 30, 2012, defendants filed an Answer.  Dkt. No. 55.  The Answer contains the affirmative defense that "[p]laintiff has failed to exhaust administrative remedies."  Dkt. No. 55 at 3.

2012). "[A]ny deprivation that does not affect the fact or duration of a prisoner's overall confinement is necessarily a condition of that confinement." Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999). The exhaustion requirement also applies even if the administrative grievance process does not provide for all the relief requested by the inmate. Porter, 534 U.S. at 524. Exhaustion for an inmate in DOCCS custody is generally achieved through Inmate Grievance Program ("IGP"). See N.Y.C.R.R. tit. 7, § 701.1, et seq. (2012).

In New York State, the administrative process consists of three steps, begun by filing a grievance with the Inmate Grievance Review Committee ("IGRC") within twenty-one days of the alleged incident. N.Y.C.R.R. tit. 7 § 701.5(b). An inmate may appeal a decision of the IGRC to the Superintendent of the facility where he is incarcerated within seven (7) days of receipt of the decision. See id. § 701.5(c). The Superintendent is to issue a written decision within twenty calendar days of receiving the inmate's appeal. Id. at § 701.5(c)(3)(ii). If the inmate is dissatisfied with the Superintendent's response, he has seven (7) days from the day he received the decision to appeal it to Central Office Review Committee ("CORC"). Id. § 701.5(d). An inmate can request an extension at any stage, "but such a request must be made in writing within forty-five days of the incident being grieved or the decision being appealed." Winfield v. Bishop, 09-CV-1066 (LEK/TWD), 2015 WL 236902, at *8 (N.D.N.Y. Jan. 16, 2016) (adopting the Report-Recommendation and Order of M.J. Dancks) (citing § 701.5(d)(1)(l)). The timely filing of the appeal with CORC is the final step in the grievance process. An appeal with CORC and receipt of a response from CORC is required prior to filing a

4

federal lawsuit.  <u>Torres v. Carry</u>, 672 F. Supp. 2d 338, 344 (S.D.N.Y. 2009); <u>see also</u> N.Y.C.R.R. tit. 7 § 701.5(d)(2)(ii) (2012) ("The CORC shall review each appeal, render a decision on the grievance, and transmit its decision . . . within 30 calendar days") (hereinafter " 7 N.Y.C.R.R. § 701.5").

Allegations of staff harassment are subject to an expedited procedure wherein the complaint is first reviewed by the Superintendent and only if it is not a bona fide claim will it be returned to the IGP for normal processing. N.Y.C.R.R. tit. 7, § 701.8 (2012).   In such cases, the Superintendent of is required to order an investigation and render a decision within twenty-five days. <u>Id.</u> § 701(a)-(f).  Disagreement with the Superintendent's decision in the expedited review process also requires an appeal to CORC.  <u>Id.</u> § 701.8 (g)-(h); <u>see</u> also <u>Espinal v. Goord</u>, 588 F.3d 119, 125 (2d Cir. 2009) (explaining IGP and the expedited procedure for harassment claims and its appeal mechanism through the CORC).  If the Superintendent fails to respond to a properly-filed grievance within the required twenty-five-day time limit, the inmate may appeal his grievance to CORC by filing a Notice of Decision to Appeal with the inmate grievance clerk.  <u>Id.</u> § 701.8(g).  The Second Circuit has long recognized this procedure as an "available remedy" for purposes of the PLRA. <u>See Hall v. County of Saratoga</u>, No. 10-CV-1120 (NAM/CFH), 2013 WL 838284, at *1-*2 (N.D.N.Y.  Mar. 6, 2013).  If an inmate is moved to another facility while the grievance is pending, he is required to mail the signed appeal back to the IGP Supervisor at the facility where the grievance was originally filed.  <u>Id.</u> § 701.6(h)(2).

## 2. **Exhaustion of Administrative Remedies**

Exhaustion of all grievances must precede the filing of a lawsuit. Neal v. Goord, 267 F.3d 116, 122 (2d Cir. 2001) ("Subsequent exhaustion after suit is filed therefore is insufficient."), abrogated in part on other grounds by Porter, 534 U.S. 516. Although the Supreme Court of the United States has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. Cnty. of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citing Giano v. Goord, 380 F.3d 670, 677 (2d Cir. 2004)). The failure to exhaust may be excused in limited circumstances.

> In determining whether such an exception is applicable, a district court must apply a three-part test: First, the court must determine whether administrative remedies in fact were available to the prisoner. Second, if such remedies were available, the court must determine whether the defendants' own actions inhibited the inmate's exhaustion of administrative remedies, thereby requiring that one or more of them be equitably estopped from raising the failure to exhaust as a defense. Finally, if administrative remedies were available and the defendants are not estopped, the court must determine whether any special circumstances justify the prisoner's failure to comply with administrative procedural requirements.

Gayle v. Benware, 716 F. Supp. 2d 293, 298 (S.D.N.Y. 2010) (internal citations omitted); see generally Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004) (articulating above test as the appropriate method for excusing failure to exhaust given the present state of all Second Circuit opinions).[3] "Unavailability of administrative

---

[3] "There is an open question regarding the continuing vitality of portions of the Hemphill framework following the United States Supreme Court's decision in Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006) that the PLRA requires 'proper exhaustion.' See Amador v. Andrews, 655 F.3d 89, 102 (2d Cir.2011) ('Subsequent decisions have questioned the continued viability of this framework following the Supreme Court's decision in [Woodford ].'). The Second Circuit Court of Appeals has repeatedly declined to reach this issue. See id. (collecting cases and declining to reach the issue)."

remedies . . . is an objective [test]: that is, would a similarly situated individual of ordinary firmness have deemed them unavailable." Kasiem v. Switz, 756 F. Supp. 2d 570, 576-77 (S.D.N.Y. 2010) (internal quotation marks and citations omitted). Estoppel occurs when "an inmate reasonably understands that pursuing a grievance through the administrative process will be futile or impossible . . . [as evidenced by] prison officials' threats, beatings, . . . denials of grievance forms, or by other misconduct deterring [the inmate] from fulfilling the requisite procedure. " Id. at 577 (internal quotation marks and citations omitted). If an inmate claims estoppel and continues to file complaints and grievances, the exception is inapplicable. Id. Special circumstances exist when an inmate's failure to comply can be justified. Id. (citations omitted). Justification is found "by looking at the circumstances which might understandably lead usually uncounselled prisoners to fail to grieve in the normally required way." Giano, 380 F.3d at 678 (citations omitted). Special circumstances have been found to exist where the inmate has "a reasonable misunderstanding of the grievances process," where the plaintiff has been threatened with physical retaliation, and where the facility has "fail[ed] to provide freelance deposit forms, deni[ed] . . . forms and writing materials, and a refus[ed] to accept or forward [the] plaintiff's appeals." Ruggerio, 467 F.3d at 175; Clarke v. Thornton, 515 F. Supp. 2d 435, 439 (S.D.N.Y. 2007) (citing Giano, 380 F.3d at 676); Casey v. Brockley, 13-CV-1271 (DNH/TWD), 2015 WL 8008728, at *7 (N.D.N.Y. Nov. 9, 2015). In the Hemphill analysis, the burden of proof with respect to the exhaustion defense rests with defendants, and plaintiff bears the burden of production as to

Nelson v. Deming, __F. Supp. 3d __, 2015 WL 6452386, at 13 n.7 (W.D.N.Y. Sept. 30, 2015).

estoppel and special circumstances.  <u>Nelson v. Plumley</u>, 12-CV-422 (TJM/DEP), 2015 WL 4326762, at *7-*8 (N.D.N.Y. July 14, 2015); <u>Bailey v. Fortier</u>, No. 09-CV-742 (GLS/DEP), 2012 WL 6935254, at *5-*6 (N.D.N.Y. Oct. 4, 2012)  (citations omitted).


## B.  **Exhaustion Hearing**

Defendants called as witnesses Karen Bellamy, Director Central Office Review Committee, DOCCS; Tara Brousseau, Inmate Grievance Program Supervisor, Clinton Correctional Facility ("Clinton"); and defendant Raymond Furina, previously a sergeant at Clinton.  <u>See</u> June Tr.  Perez testified at the evidentiary hearing.  <u>See</u> July Tr.


### 1.  **Karen Bellamy**

Defendants called Ms. Bellamy as a witness.  She testified that the inmate grievance program is memorialized in DOCCS Directive 4040.  Exh. D-11.  Ms. Bellamy testified that the inmate grievance process involves three steps.  June Tr. at 8. The first step is that an inmate files a complaint which, depending on the type of complaint, is first reviewed by the IGRC.  <u>Id.</u>.[4]  If the inmate is not satisfied with the response he receives from the IGRC, he may appeal to the Superintendent who reviews the matter and renders a decision.  <u>Id.</u>  As a final step, the inmate may appeal the Superintendent's decision to the CORC.  <u>Id.</u>

Ms. Bellamy procured a computer print out of the grievances that Perez

---

[4]  Citations to page numbers of the June and July hearing transcripts refer to the pagination provided on the transcript itself, rather than that generated by CM/ECF.

appealed to the CORC. Exh. D-9. Ms. Bellamy testified that Perez did not exhaust his administrative remedies by filing an appeal with her office with respect to an excessive use of force by defendants Rabideau, Duquette, St. Louis, Furima, or Tousignant on February 3, 2009. July Tr. at 10. Perez further failed to file an appeal to her office with respect to a grievance that defendants Furima and Tousignant denied him medical treatment on February 3, 2009. Id.

The CORC records contain four documents concerning Perez. June Tr. at 14. The first is a four-page letter that Perez mailed to CORC, dated February 23, 2009. Id. at 15; Exh. D-5. In that letter, Perez inquires regarding the status of four grievance appeals that he had mailed to CORC, dated December 15, 2008 (CL-58325-08), December 25, 2008 (CL-58385-09), January 5, 2009, and January 17, 2009. Id. It is noteworthy that none of the grievances that Perez addressed in that letter relate to any incident occurring at Clinton on February 3, 2009. Id. Perez contends that he did not include the February 5 grievance in this letter because the IGRC still had time to respond. July Tr. at 21.

The CORC records also contain an April 23, 2009 letter from Bellamy to Perez responding to the February 23, 2009 letter. June Tr. at 17; Exh. D-6. In that correspondence, Bellamy advised Perez that of the six grievances that she had record of him filing at Clinton, only two had been appealed to CORC, grievance CL-57945-08 and grievance CL-58385-09. Id. at 18.; Exh. D-6. She also informed him that he had "not filed a grievance regarding mail tampering" and that Directive 4040 "makes no provision for an inmate to refer grievances directly to Central Office." Id.

9

The third letter in the CORC file is from Perez to CORC. Exh. D-7. Perez mailed that correspondence, dated April 20, 2009, while housed at the Southport Correctional Facility ("Southport"). June Tr. at 19. Perez appended to that correspondence a four-page letter dated February 5, 2009, addressed to the IGRC at Clinton, in which he discusses at length the assault and denial of medical care that he alleges occurred on February 3, 2009. Id. at 26-27; Exh. D-7. Bellamy confirmed that the IGRC had not received a copy of this letter and the appended documents. Id. The February 5, 2009 letter does not contain an inmate grievance number. Id. at 38-39. The body of the letter itself does not discuss filing a grievance relating to the attachment discussing the February 3 incidents. Exh. D-7. Further, there is no record that Bellamy was aware if the February 5, 2009 letter was ever filed as a grievance at Clinton. Id.

The fourth letter is from Bellamy to Perez. Exh. D-8. In that correspondence, Bellamy acknowledges receipt of Perez's April 20, 2009 letter and advises him that his concerns were addressed in her letter dated April 22, 2009. June Tr. at 20; Exh. D-8. Bellamy testified that the April 22 letter informed Perez that her records revealed that he had filed six grievances and appealed two to CORC, and that he should "see the grievance supervisor at the facility." June Tr. at 32-33.

2. **Tara Brousseau**

Tara Brousseau is the inmate grievance program supervisor at Clinton. June Tr. at 42. As supervisor, she receives and processes inmate grievances and oversees the IGRC. Id. An inmate has twenty-one days from the date of an incident to file a

grievance.  Id. at 43.  If mitigating circumstances are present, pursuant to Directive

4040, she may permit an inmate to file a grievance for up to forty-five days after an

incident.  Id.; Exh. D-11.  A grievance can no longer be filed after the forty-five day

period.  Id.  When her office receives a grievance, it is date stamped as received and is

given a title, coded, and given a grievance calendar number.  Id. If an inmate is not

satisfied with the IGRC decision, he may appeal that decision to the facility

superintendent.  Id. at 44.  An inmate may then appeal the superintendent's decision to

CORC.  Id.  An inmate who appeals a decision to CORC has exhausted his

administrative remedies.  Id.

Ms. Brousseau testified that her review of the records at the Clinton IGRC office

revealed that Perez did not file a grievance regarding use of excessive force on

February 3, 2009.  June Tr. at 45.  The record search further revealed that Perez did

not file a grievance regarding the denial of medical treatment by the staff at Clinton on

February 3, 2009.  Id.  On February 17, 2009, Perez was transported to the Auburn

Correctional Facility ("Auburn").  Id. at 48.  He was transported from Auburn to the

Downstate Correctional Facility ("Downstate").  Id.  While at Auburn or Downstate,

Perez was able to file a grievance with her office at Clinton, but he did not.  Id.  Perez

returned to Clinton on March 2, 2009.  Id. at 39.


### 3.  **Raymond Furina**

Defendants called Raymond Furina as a witness.  June Tr. at 76.  In February

2009, Mr. Furina was a sergeant at Clinton.  Id.  General mail and grievances are

placed in a mailbox which is bolted to the wall in D-Block, where Perez was housed.  Id. at 81.  The officer on the morning shift and an "inmate who goes around with him" pick up the mail on a daily basis.  Id. at 82.  The only person with access to a key to the mailbox is the officer on the morning shift.  Id.  Furina explained that if an inmate has a medical call-out, they could also hand their mail to someone there.  Id. at 81. Perez never handed mail to Mr. Furina, and he has no knowledge of anyone, including himself, tampering with Mr. Perez's mail.  Id. at 82.  Mr. Furina also testified that officers will sometimes use a "to-from" memo to respond to allegations made against them in a grievance.  Id. at 90.

## 4.  **Perez**

In 2011, defendants made a motion to dismiss based on Perez's failure to exhaust his administrative remedies.  Dkt. No. 40; July Tr. at 14.   In his response in opposition to the motion, Perez argued that corrections officers prevented him from filing a grievance regarding the February 3, 2009 use of excessive force and denial of medical care.  Dkt. No. 45; July Tr. at 14-16.

At the evidentiary hearing, defense counsel read into the record a portion of the transcript of a deposition of Perez conducted on August 28, 2012.[5]  During that deposition, Perez was asked the following questions and gave the following responses:

> "Question: From February 3 until March 26 of 09, did you file any grievances at Clinton Correctional Facility?

---

[5]  The deposition transcript was not received in evidence.  Defense counsel provided the Court and Perez with pages 1, 138, 153, and 154 from volume 1 of the deposition of Perez that was conducted on August 28, 2012.

Answer: No.

Question: As of February 3ʳᵈ of 09 at Clinton Correctional Facility, you were certainly aware of the grievances procedures that were in place at

Answer: Yes I was.

Question: And you had filed grievances before that date for various reasons?

Answer: Yes.

Question: And you had – had filed grievances and actually brought them up to, up to CORC, C-O-R-C, in caps, at some point?

Answer: Brought them where?

Question: To the Central Office Review Committee

Answer: Yes.

June Tr. at 73-74.

The hearing resumed on July 22, 2009.  See July Tr. (Dkt. Nos. 160, 167-2).

Perez testified at that proceeding.  Id.  Perez generally recalled being deposed in

August 2012.  July Tr. at 8-9.  He contended that he was nervous during the deposition

because a corrections officer was present in the room.  Id. at 9.  Perez has been

diagnosed with a mental illness, Schizoaffective disorder, which affects his memory.  Id.

at 9-10.  Perez was questioned regarding his testimony at his August 28, 2012

deposition.  At the deposition, Perez testified that he did not file his grievance regarding

the February 3, 2009 incident because the guards threatened him and refused to allow

him to file grievances.  Id. at 19.  The guards would tamper with his mail or destroy it.

 Id.  He further testified that, because of the threats he instead attempted to have the

February 3, 2009 incidents addressed by "argu[ing] to my Tier III disciplinary

13

superintendent's appeal" and in the "Article 78 as well." <u>Id.</u> at 19-20.

At the evidentiary hearing, Perez was shown exhibit D-5 by his attorney. July Tr. at 20. Perez testified that the last four pages of that exhibit are a copy of a grievance dated February 5, 2009, addressed to the IGRC relating to the February 3 assault and denial of care. <u>Id.</u> at 7. He testified that he mailed the grievance to IGRC by placing the grievance in a mailbox outside of the company on the block on February 5, 2009. <u>Id.</u> at 8. Perez did not receive a response from the IGRC regarding the grievance he filed at Clinton on February 3, 2009. <u>Id.</u> On April 20, 2009, Perez wrote to CORC regarding various grievances he had filed at Clinton. <u>Id</u>; Exh. D-7. Perez further testified that, although he received no response from IGRC, he did not appeal to the Superintendent or contact him to let him know that he received no response. <u>Id.</u> at 29-30. He testified later in the hearing that he did write letters to the Superintendent amounting to "letter complaints about the incident, February 4th, 2009, and . . . letting him know I filed many grievances and grievances in this matter get no responses[.]" <u>Id.</u> at 32. He further testified that he wrote to the IGRC to inquire about the status of his February 5, 2009 grievance but that he does not have a copy of the letter. <u>Id.</u>

While at Auburn, Perez wrote to CORC inquiring about the status of various grievances he had filed. <u>Id.</u>; Exh. D-5. The letter identifies four grievances, all filed in December 2008 and January 2009. Exh. D-5. Perez did not mention the February 5, 2009 grievance in that letter. <u>Id.</u> He testified that he did not mention the February 5 grievance because he was still waiting to hear from the IGRC, as the time for its response had not expired. July Tr. at 21. On April 20, 2009, Perez wrote to CORC

from Southport, inquiring about the status of certain grievances he had filed, and attached a copy of the February 5, 2009 grievance to that letter. July Tr. at 25-27; Exh D-7. There is no reference in that letter to any grievance filed on February 5, 2009, but the letter indicates that there are "enclosed grievances." Id. at 27.

Perez never received a response from the IGRC regarding the grievance he allegedly filed on February 5, 2009. July Tr. at 29. Because he never received a response from the IGRC, Perez testified that he "directly appeal[ed]" to CORC "even though [he] know[s] that the director said inmate are not allowed to directly appeal himself to Central Office Review Committee." Id. at 29-31. He also testified that he appealed to CORC because he "read the PLRA" which says that if he does not get a response to his grievance, "still appeal it directly without a response[.]" Id. at 30. Perez testified that he is "100 percent" familiar with the inmate grievance procedure. Id. at 28. He provided that an inmate can start the grievance process by filing a grievance with the IGRC. Id. If an inmate is not satisfied with the IGRC's decision, Perez explained that he must file an appeal with the Superintendent. Id. Perez further explained that an inmate who is unsatisfied with the Superintendent's decision must appeal it to CORC. Id.

## IV. **RECOMMENDATION**

At the conclusion of the hearing, each party was given the opportunity to file a post-hearing brief. In his brief, Perez argues that he exhausted his remedies regarding the medical indifference claim. Dkt. No. 168 at 7-13. Perez further contends that

special circumstances are present which excuse his failure to properly exhaust his administrative remedies regarding his excessive force claim. Id. at 15-17.

A. **Did Perez Exhaust?**

The undersigned finds that defendants have demonstrated that Perez failed to exhaust his administrative remedies regarding the alleged incidents of February 3, 2009 at Clinton. On May 3, 2009, Perez filed his complaint in this action. Dkt. No. 1. He annexed 344 pages of exhibits to that complaint. See id. Perez did not include with those papers a copy of any grievance concerning events allegedly occurring on February 3, 2009. Id. On August 8, 2011, defendants filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56. Dkt. No. 40. In that motion, defendants argue, among other things, that Perez failed to exhaust his administrative remedies. Dkt. No. 40-4 at 6-9. On September 23, 2011, Perez filed his response in opposition. Dkt. No. 45. In that response, Perez sets forth his first theory regarding exhaustion – that corrections officers prevented him from filing a grievance by tampering with his mail and threatening to kill him. Dkt. No. 45-2 at 8. In that opposition, he does not mention having filed a grievance on February 5, 2009. Dkt. No. 45. Perez testified at a deposition in 2012. At that deposition, he also did not mention that he filed a grievance. July Tr. at 16-17; 19-20, 53. Instead, he contended that block officers prevented him from mailing a grievance, and that he thought he could have the grievance addressed in his response to a Tier III disciplinary appeal. July Tr. at 51-52. At the exhaustion hearing, when asked why he did not state at his deposition that he filed a grievance,

Perez testified that he did not mention the grievance at that time because he was nervous because a corrections officer was present in the room. Id. at 12-13, 18. He also contends that he his forgetful because of his mental health disorder. Id. at 9-10. Perez's second theory, set forth at his deposition, was that, because he had difficulty filing grievances due to the officers' conduct, he felt the issue could be addressed through the Tier III hearing. Id. at 28-30.

As discussed above, Perez presented several theories since filing this complaint: (1) that he was prevented from filing a grievance because block officers threatened his life, and tampered with or destroyed his mail or otherwise prevented him from sending mail; (2) that he did not file a grievance because of the destruction of mail and because he felt the issue could be handled by addressing it in his Tier III disciplinary hearing; (3) that he did file a grievance on February 5, 2009, he did not receive a response from the IGRC, so he appealed directly to CORC, despite being aware that inmates are required to appeal to the Superintendent if they do not receive a response from the IGRC; and (4) he filed a grievance with the Superintendent through his February 16 and 18, 2009 letters to the Superintendent.

Having had the opportunity to observe Perez's testimony and his demeanor, in addition to hearing the testimony of the defense witnesses, receiving the various documents in evidence, and reviewing the parties' briefs. the undersigned concludes that Perez's contention that he has exhausted his administrative remedies is not credible. A search of the records maintained at Clinton revealed no record of Perez having filed a grievance with the IGRC about an incident of excessive force or for denial

of medical care relating to a February 3, 2009 incident, and demonstrated that CORC also had no record of a grievance appeal regarding this incident. See June Tr. at 45-46. Both Bellamy and Brousseau testified that they searched CORC records and IGRC records, respectively, and found no record of Perez having filed a grievance with the IGRC or an appeal with CORC. Id. at 45. Bellamy produced a printout of all of the grievances Perez filed while at Clinton. Exhs. D.-9, D-13. There is no grievance regarding the February 3, 2009 assault or denial of medical care on that list. Id.

Even assuming that Perez had filed a grievance to the IGRC on February 5, 2009, and the IGRC improperly failed to respond or never received the grievance, Perez was required to appeal to the Superintendent. Murray v. Palmer, 03-CV-1010, 2008 WL 2522324, at *15, 18 & n. 46 (N.D.N.Y. June 20, 2008) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.) ("[E]ven if Great Meadow C.F. did not (during the time in question) have a functioning grievance-recording process (thus, resulting in Plaintiff's alleged grievance never being responded to), [the p]laintiff still had the duty to appeal that non-response to the next level.") (citing Midalgo v. Bass, 03-CV-1128, 2006 WL 2795332, at *7 (N.D.N.Y. Sept. 26, 2006)). Perez testified that he was "100 percent" aware of his duty to appeal directly to the Superintendent. July Tr. at 27-28. In the post-hearing brief, counsel for Perez argues, almost as an alternative argument to his "direct appeal to CORC" argument set forth at the exhaustion hearing, that Perez did, in fact, file a grievance directly to the Superintendent, and then appealed to CORC when he did not get a response from the Superintendent. Dkt. No. 168 at 15-16.

Counsel contends that Perez exhausted his administrative remedies specifically

in relation to his medical indifference claim because, in addition to filing a grievance on February 5, 2009 with the IGRC, on February 16 and February 18, 2009, Perez filed letters with the Superintendent contending that he was assaulted on February 3, 2009. Dkt. No. 168 at 9-10[6] (citing Exh. D-4).  Perez's counsel argues that these letters amount to the proper commencement of a grievance, as excessive force and denial of medical treatment are considered harassment under NYCRR tit. 7, § 701.2(e) and grievances about these matters are subject to the expedited procedure.  Id. at 15.[7]  Perez's counsel contends that, after receiving no response from the superintendent, Perez then properly appealed to CORC.  Id. at 15; Exh D-7 .  Counsel states that the CORC appeal was the April 20, 2009 letter Perez sent to Bellamy wherein Perez references enclosed grievances in the letter, explains that he is attempting to exhaust his administrative remedies, and appends to the letter a copy of the February 5, 2009 grievance.  Counsel argues that Bellamy's response dated April 23, 2009 that provided that only two of his grievances were appealed to CORC improperly informs Perez that he could not make a grievance directly to CORC.  Exh D-6.  He suggests the fact "[t]hat plaintiff was appealing the February 5 Grievance for timeliness seems lost on Bellamy." Dkt. No. 168 at 15.   He argues that CORC's response, Exh. D-6, D-8, amounts to a response to the grievance from CORC, and, thus, an exhaustion of remedies.  Dkt. No. 168 at 16.

---

[6]  References to pages in Perez's post-hearing brief refer to the pagination generated by CM/ECF.

[7]  Specifically, Perez's counsel contends, "[p]laintiff's grievance was one for harassment and as began in the first instance with the Superintendent.  Plaintiff waited, as he must, for at least the requisite number of days for the Superintendent's determination.  Having received none, he appealed to CORC. Dkt. No. 168 at 15.

Perez sent a letter to the Superintendent dated February 16, 2009 from Downstate, requesting that he review video footage from the hospital on February 3, 2009 from 8:30 p.m. to 9:00 pm. and discussing that he was "fraimed [sic] with a weapon . . . by Rabideau . . . and brutally assaulted by him and other C.O.s" Id. at 37; Exh. D-2 at 1.  Although the letter discusses the alleged assault, the letter does not discuss filing a grievance relating to the February 3 incident or suggest that he was attempting to initiate a grievance.  Id. at 38.  Perez contends that he did not mention grievances in these letters because "different officials . . . handle different – they do investigation different ways and I just need investigation different ways as well."  July Tr. at 38.  Perez also testified that he wrote a letter to the Superintendent dated February 18, 2009, sent from Downstate.  Id. at 42.  The February 18 letter references the letter he sent to the Superintendent dated February 16, 2009.  Exh D-4.  Although the February 18 letter discussed an alleged assault on February 3, Perez concedes that the February 18 letter does not mention filing a grievance relating to the February 3 incident.  Id.

Perez's counsel further points, as "evidence" that "confirms that the February 5 Grievance . . . was investigated," (1) a "to-from" letter dated February 11, 2009  to Sergeant Lafrance from Rabideau stating that "the claims made by Perez completely [sic] false," (2) a letter dated February 18, 2009 from Sergeant Guynup to Captain Holdrige allegedly referring to the February 3, 2009 assault, and (3) a letter dated February 18, 2009 from Rabideau to Sergeant Gunyup stating, among other things, that allegations made by Perez "are completely false and without any merit" and that "at no

time have I ever been involved in any conspiratorial act towards said inmate.[.]" (Exh P-3). Dkt. No. 168 at 12-13. Further, counsel points out Furina's exhaustion hearing testimony wherein he acknowledged that these letters, Perez's exhibit 3, were written on forms, "to-from" memos, which were forms generally used when responding to allegations made in a grievance. Id.

As the exhibits entered into evidence at the exhaustion hearing provide, Perez received a misbehavior report on February 4, 2009 authored by Rabideau relating to the incident on February 3. Exh. P-2. The misbehavior report charged him with violating Rules 113.10 (weapon) and 114.10 (smuggling). Id. at 3. The misbehavior report lead to a Tier III disciplinary hearing conducted on February 6, February 13, 2009, March 5, and March 6 and a guilty disposition.[8] See Exh. P-2. Throughout the hearing transcript, Perez brings up incidents of assault and denial of medical care, and the hearing officer indicates that Perez had already informed the Superintendent of an alleged assault and that she had also contacted the Superintendent regarding these claims for an investigation. Id. at 5-8, 15.[9] Thus, letters from Rabideu and Guynup relating to unspecified "claims" could be referring to investigation relating to or arising out of the Tier III hearing, Perez's letters of complaint to the Superintendent, or the hearing

_____

[8] Although it is unclear from the exhaustion hearing, for purposes of a clear record, Perez was involved in two disciplinary hearings – a Tier II and a Tier III hearing. The Tier III hearing occurred on March 6, 2009 and related to the incidents that occurred on February 3, 2009. Exh. P-2. The Tier II disciplinary hearing occurred on February 6, 2009 and March 3, 2009 which appears to be relating to misbehavior report for property damage or loss in violation of Rule 116.10 relating to Perez's alleged loss of his state-issued razor. Exh D-3.

[9] Hearing Officer Keysor's specific statement is as follows, "when you had indicated that you were assaulted and . . . previously I had asked you if you had reported it to the Superintendent and you had told me that you had . . . I also . .. sent to Superintendent when you first advised me of it I did send the Superintendent an e-mail as well letting him know that it could be investigated as well." Exh. P-3 at 15.

officer's e-mail to the Superintendent. The undersigned disagrees with the conclusion that Perez's counsel attempts draws from these letters. Although Perez filed these letters with the Superintendent and the letters would serve to inform the Superintendent that an assault occurred on February 3, 2009, the mere fact that Perez is alerting the Superintendent about an alleged assault does not mean that the letters suffice to serve as formal grievances. The letters do not indicate an attempt to file a grievance or that Perez has already filed a grievance. Further, though the February 3, 2009 assault and denial of medical care may have been "investigated," it does not mean that they were investigated because Perez filed a formal grievance. The letters in exhibit P-3 do not mean, nor will the undersigned look past the mismatched premises to conclude, that the letters show that Rabideau was referring to a formally-filed grievance relating to the February 3, 2009 alleged assault and denial of medical care. Exh. P-3.

Further, the letters sent to CORC on February 23 and April 20, 2009, Exhs. D-5, D-7, do not suffice as an appeal. The February 23, 2009 letter asks CORC about the status of four grievances – dated December 15, 2009, December 25, 2008, January 5, 2009, and February 17, 2009. Exh. D-5 at 1-2. In response to this letter, Bellamy provided that CORC had record of only two appeals having been appealed to CORC. Exh. D-6. In the April 20 letter, Perez references his grievance filed on December 25, 2009 (CL058385-09), and states that he enclosed with the letter "[t]he Grievances That [he] had Appealed to [CORC] on January 14, 2009, January 30, 2009, and March 3, 2009." Exh. D-7 at 2. The April 20 letter also stated that he enclosed "Four Grievances Appeals . . . that would also show you that not only have I filed and/or made every effort

22

what-so-ever to exhaust the enclosed Grievances[.]" Id.  Attached is a four-page

handwritten letter dated February 5, 2009, addressed to the IGRC, wherein Perez

explains that he was beaten by Sergeant Furina and other officers, and was placed in a

keeplock cell for two days without medical care for his injuries. Id.  The letter contends

that "this grievance is only being filed against medical staff and prison officials at Clinton

Correctional Facility from denying me my right to medical treatment and/or care as

complained herein, while being under the care and custody of the NYS DOCS."  Id.

Here, even assuming that Perez filed a grievance with the IGRC on February 5,

2009, when Perez did not receive a response to his grievance from the IGRC, he never

appealed to the Superintendent.  His letters dated February 16, and 18, 2009 to the

Superintendent did not amount to an initiation of a grievance or a grievance appeal.

Exh. D-4; see Macias v. Zenk, 495 F.3d 37, 44 (2d Cir. 2007) (rejecting the argument

that prisoners can take "enough informal steps to put prison officials on notice of their

concerns, regardless of whether they utilize[d] the prison's formal grievance

procedures" and concluding, "after Woodward, notice alone is insufficient because "[t]he

benefits of exhaustion can be realized only if the prison grievance system is given a fair

opportunity to consider the grievance . . . and [it] will not have such an opportunity

unless the grievant complies with the system's critical procedures.") (internal quotation

marks omitted).  Similarly, the April 20, 2009 letter to CORC, although including a copy

of the alleged February 5 grievance, also did not exhaust his administrative remedies

because the undersigned is not convinced that Perez commenced a grievance with

either IGRC or the Superintendent.  Further, the April 20 letter also did not mention

23

filing a grievance and the attachment did not contain a grievance number.  Because
Perez did not properly file an initial grievance or submit an appeal with the
Superintendent, sending a copy of the alleged grievance to CORC does not amount to
exhausting his administrative remedies.

Insofar as Perez argues[10] that he sufficiently exhausted because he raised the
issue in his Tier III disciplinary hearing, although such claims suffice where the plaintiff's
belief that such would sufficiently exhaust his administrative remedies is reasonable,
Reynoso v. Swezey, 238 F. App'x 660, 662 (2d Cir. 2007); here, where Perez was fully
aware of the grievance procedure, such a claim is not reasonable.  Although, in some
circumstances, informal grievances may suffice to exhaust an inmate's administrative
remedies, here, Perez was knowledgeable about the grievance process, had fully
exhausted grievances in the past, and did not, at any point, testify that he was confused
about how to exhaust.  July Tr. at 28; see Dabney v. Pegano, 604 F. App'x 1, 4 (2d Cir.
2015) (summary order) (citing Hernandez v. Coffey. 582 F.3d 303, 305 (2d Cir. 2009)
("requiring inmates to 'us[e] all steps that the agency holds out, and do[] so *properly*.'").

Accordingly, the undersigned finds that plaintiff failed to properly exhaust his
administrative remedies relating to his medical indifference claim.

B.  **Estoppel and Special Circumstances**

Perez concedes that he failed to exhaust his excessive force claim, but argues

---

[10]  This argument was not explicitly argued in the post-hearing brief, but Perez did set forth
testimony regarding this at his deposition and at the exhaustion hearing.

that his excessive force claim should be deemed exhausted because special circumstances exist insofar as he was at risk of retaliation and injury from officers if he filed a grievance about them. Dkt. No. 168 at 19. "The second prong of the Hemphill analysis requires courts to consider whether, under the circumstances, defendants are estopped from asserting failure to exhaust as an affirmative defense." Dukes v. S.H.U. C.O. John Doe #1, 03-CV-4639 (CLB/MDF), 2006 WL 1628487, at *5 (S.D.N.Y. June 12, 2006) (citing Hemphill, 380 F.3d at 686). The final prong of the Hemphill analysis is whether special circumstances exist to excuse the inmate's failure to exhaust. 380 F.3d at 689. For the reasons that follow, the undersigned finds that defendants should not be estopped from arguing failure to exhaust nor do special circumstances exist excusing Perez's failure to properly exhaust.

Perez claimed, up until the exhaustion hearing, that officers prevented him from filing a grievance by tampering with or destroying his mail or threatening him not to file grievances. However, Perez testified at the exhaustion hearing that the officers' threats did not prevent him from filing the February 5, 2009 grievance with the IGRC and that he did file a grievance to the IGRC on February 5, 2009 by placing it in the mailbox on his block. July Tr. at 50. He testified, in contrast to his deposition testimony, that he was not afraid of the threats from the officers and the threats did not dissuade him from filing, because "at the time [he] felt suicidal so [he] felt . . . [he was] going to die anyway and [he] grieved it." Id. at 49-51. Perez further testified that he received no response from the IGRC so he appealed directly to CORC by attaching a copy of the February 5, 2009 grievance in a April 20, 2009 letter to CORC. Id. at 8, 17, 29-31, 43. Where an

inmate's attempt at exhausting, while improper, "reflected a reasonable interpretation" of the regulations, special circumstances may be found to exist to excuse the failure to properly exhaust. Hemphill, 380 F.3d at 689. Counsel further suggests, without explaining whether he was abandoning the filing with the IGRC argument, that Perez exhausted by filing with the Superintendent and then appealing to CORC when he received no response.

As discussed above, counsel attempts to set forth a distinction between the assault and the medical indifference claims. At his exhaustion hearing, Perez did not attempt to distinguish his excessive force claim from his medical indifference claim, and argued that he grieved both. See July Tr. Counsel suggests that Perez exhausted the medical indifference claim by filing with IGRC and the Superintendent, and appealing to CORC, but should be excused from failing to exhaust his claim relating to the assault due to threats from correction officers. To the extent counsel seeks to separate out these claims, Perez also has not met his burden of production in showing that he was too intimidated to exhaust his assault grievance. Nelson, 2015 WL 4326762, at *7-*8.

Perez's counsel references the alleged February 5 grievance wherein Perez specified that the grievance was only intended to be filed against "Medical Staff and prison officials at Clinton Correctional Facility for denying me my right to medical treatment and/or care as complained herein," and argues that this shows that Perez went "through tortured lengths not to implicate Officer Rabideau and the other Correctional Officers." Dkt. No. 168 at 19. The claim that Perez failed to grieve the incident of denial of medical treatment because he feared retribution is plainly

contradicted by the other evidence introduced at the evidentiary hearing.  In the February 16 and February 18 letters to the Superintendent, Perez identifies and implicates Rabideau and Furina; indicates that he was beaten by them, along with other corrections officers; talks in great length about being assaulted; and advises the Superintendent that if he obtained video footage from the hospital, it would reveal that an nurse came into his room with an ammonia bottle in order to revive him.  Exh. D-2 at 2; Exh. D-4. Exh.  The letter also indicates that the Superintendent would be "very disaponted [sic] to know that your offices at this facility are acting off the scope of their official duties and/or employments." Exh. D-2 at 2.  Similarly, in the February 18 letter, Perez identifies Rabideau and contends that he assaulted him.  See Exh. D-4 at 2 ("After the Law Library officer K. Rabideau had fraimed [sic] me with a weapon and brutally assaulted me with other officers and the Area Sgt . . . ."; ""The officer who conducted the strip search and the area Sgt. named Furina, along with the other correction officers who were in the hospital room on that day, had brutally beaten me, until I lost conscious [sic], and then had a nurse come in the room with an amonia [sic] bottle to help them wake me up form loosing [sic] conscious [sic].").

As Perez clearly implicates Officers Rabideau and Furina, and does so by sending letters to the Superintendent – at least one of which from within Clinton – the undersigned does not find credible Perez's current contention that he failed to exhaust his administrative remedies by intentionally excluding a claim about excessive force in a grievance because he was fearful of being hurt by Furina, Rabideau, or other officers. See Dkt. No. 168.  Although it can be said that, at some point, certain Clinton officials

were informed of Perez's allegation that he was assaulted on February 3, 2009, it was not sufficient to notify them of the desire to file a grievance. "In determining whether special circumstance exist that will excuse a failure to exhaust, the court must evaluate the 'circumstances which might understandably lead usually uncounseled prisoners to fail to grieve in the normally required way.'" Morrison v. Parmele, 892 F. Supp. 2d 485, 488 (W.D.N.Y. 2012) (quoting Giano, 380 F.3d at 678)). Perez is not an uncounselled inmate. He did not testify that he misunderstood how to exhaust his remedies; instead, he testified that he was fully aware of the exhaustion requirement and the steps required for the IGC. July Tr. at 28. Thus, plaintiff's failure to exhaust either the excessive force or assault claim is not excused by the special circumstance that he may have reasonably misunderstood the proper way to grieve his assault claim.

Insofar as Perez contends that special circumstances exist because the officers were tampering with his mail and threatening him, the undersigned finds that this argument lacks merit. Although threats have been held sufficient to excuse an inmate's failure to properly or fully exhaust in seem cases, those circumstances are not present here. Hemphill, 380 F.3d at 690-91. Perez's counsel refers to an earlier Report-Recommendation on a motion for summary judgment written by Magistrate Judge Homer in this case.[11] In that Report-Recommendation, counsel points out that Judge Homer states that Perez's "filing of the letter [to Artus] does not disprove that any potential claims that Perez was actually in fear from the harassment," and argues that Perez's filing a letter with Artus, rather than with the IGRC, "in conjunction with Perez's

---

[11] Prior to his retirement, Judge Homer was the magistrate judge assigned to this case.

28

refusal to wrote any additional correspondence until being away from Clinton" supports Perez's claim that the intimidation prevented him from exhausting. Dkt. No. 169 (citing Dkt. No. 48). However, Perez was able to successfully send mail to the Superintendent on February 16 from Clinton and on March 4, 2009; from Downstate on February 18, 2009; from Auburn and Southport on February 23, 2009 and April 20, 2009, respectively. July Tr. at 20-21, 24-25, 33-39; Exhs. D-2, D-4, D-7. Although Perez's counsel suggests that it is relevant – and indicative that Perez was fearful of filing anything through Clinton's mail system – that Perez waited until he was at other facilities to file letters regarding the alleged assault (Dkt. No. 168 at 18-19 citing Dkt. No. 48), Perez sent the Superintendent a letter on February 16 from Clinton, and he was away from Clinton on an unrelated Court trip from February 17, 2009 until March 2, 2009. Exh. D-10; June Tr. at 48-49. Thus, Perez did contact Clinton officials regarding the alleged assault while at Clinton and, identified those individuals who he believed to have been involved. Id. He would not have been able to send letters from Clinton after February 17 because he was not present there again until March 2. Exh. D-10; June Tr. at 48-49. Thus, the undersigned concludes that there are no special circumstances excusing Perez from exhausting his administrative remedies.

## IV. **CONCLUSION**

In sum, the undersigned does not believe that Perez exhausted his administrative remedies relating to his claim of medical indifference. As it relates to the medical indifference claim, where a prisoner files a grievance with the IGRC and

receives no response, the PLRA's exhaustion requirement obligates the inmate to appeal to the next higher level in the IGC, the Superintendent.  See 7 N.Y.C.R.R. § 701.6(9); Veloz v. New York, 339 F. Supp. 2d 505, 515 (S.D.N.Y. 2004), aff'd 178 F. App'x 39 (2d Cir. 2006) ("[P]laintiff's allegation that these particular grievances were misplaced or destroyed by correctional officers ultimately does not relieve him of the requirement to appeal these claims to the next level once it became clear to him that a response to his initial filing was not forthcoming."); see also Smith v. Kelly, 985 F. Supp. 2d 275, 281-82 (N.D.N.Y. 2013) (concluding that a plaintiff must appeal to the superintendent if the IGRC failed to respond to his grievance); Reyes v. Punzal, 206 F. Supp. 431, 433 (W.D.N.Y. 2002) (same).  Perez is highly familiar with the grievance process, and was aware of the proper steps he needed to take to exhaust his medical indifference claim.  Perez does not contend that the IGC system was confusing, or that he did not know how to properly file a grievance. Perez states that he filed a grievance with the IGRC, and also alleges that he filed a grievance, through the February 16 and 18, 2009 letters with the Superintendent, and then appealed the lack of response to CORC through the April 20, 2009 letter.  However, the February 16 and 18 letters to the Superintendent may have put the Superintendent on notice that he was alleging he was denied medical care, they were couched in terms related to his misbehavior report and asking the Superintendent to review video evidence.  There is nothing in those letters that would suggest that they were an attempt to file a grievance about denial of medical treatment.  Further, as stated, appending a four-page letter that does not have a grievance number, to the April 20, 2009 letter to CORC that does not mention that he

filed a grievance relating to a February 3, 2009 assault and denial of medical care also does not suffice. Macias v. Zenk, 495 F.3d 37, 43 (2d Cir. 2007) (citing Johnson v. Testman, 380 F.3d 691 (2d Cir. 2004) ("Regardless of whether [the plaintiff's] tort claims or informal complaints put the prison officials on notice of his grievances '*in a substantive sense*,' Johnson makes clear that to satisfy the PLRA a prisoner must also *procedurally* exhaust his available administrative remedies.").

The undersigned concludes further that Perez has failed to meet his burden of production to show that special circumstances exist to excuse his failure to exhaust the assault claim. As discussed in detail above, Perez has failed to show that the alleged threats or intimidation prevented him from using the mail system and the investigation and hearing of his Tier III misbehavior report, to inform the Superintendent and CORC regarding the alleged assault. He successfully used the mail to file other grievances, and was completely aware of the proper method he needed to take to exhaust his claim.

Accordingly, the undersigned determines that plaintiff has failed to exhaust his administrative remedies relating to the alleged excessive force and denial of medical treatment at Clinton on February 3, 2009.


      **WHEREFORE**, it is hereby

      **RECOMMENDED**, that Perez's complaint be dismissed, with prejudice based on

31

a failure to comply with the exhaustion requirements of 42 U.S.C. § 1997e(a)[12]; and it is

      **ORDERED** that the Clerk of the Court serve a copy of this Report-

Recommendation and Order on the parties in accordance with Local Rules.

      Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten

days within which to file written objections to the foregoing report. Such objections shall

be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN**

**FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette,

984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Services,

892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

**IT IS SO ORDERED.**


      Dated: January 19, 2016
           Albany, New York

*Christian F. Hummel*

Christian F. Hummel

U.S. Magistrate Judge

---

[12] Nathaniel Charny, Esq. was appointed to represent Perez in this action pro bono. The Court wishes to thank Mr. Charney for his efforts on behalf of Perez.